THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| VINCENT BLACKMORE and DANYALE BLACKMORE,<br><br>Plaintiffs,<br><br>v.<br><br>JARED CALSON, ERIC DEMILLE, LA-NORMA RAMIREZ, WASHINGTON COUNTY, and HURRICANE CITY,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART WASHINGTON COUNTY DEFENDANTS' [76] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:21-cv-00026-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff Danyale Blackmore ("Blackmore") was transported to and booked at the Washington County Purgatory Correctional facility ("Jail") on January 6, 2020. She had been arrested at the My Place Hotel in Hurricane, Utah by two Hurricane City Police Officers.[1] Blackmore, who is an owner of the hotel, was arrested in the hotel lobby after she had a heated interaction with the two officers and a hotel guest that was purportedly locked out of the hotel. Blackmore alleges she was unlawfully strip-searched at the Jail.[2] Blackmore and her husband[3] Vincent Blackmore brought suit against Washington County and a Jail Deputy, La-Norma Ramirez ("Ramirez"),[4] for Section 1983 claims of failure to train (Fourth Cause of Action),

---

[1] Located at 1167 West 80 South, Hurricane, Utah.

[2] Amended Complaint and Jury Demand ("Amended Complaint"), docket no. 122, filed February 14, 2022, ¶¶ 92-95, 156-174.

[3] As explained *infra* at section III.D, Plaintiff Vincent Blackmore admits he has no claims against the Washington County Defendants. Accordingly, the use of the term "Blackmore" refers only to Plaintiff Danyale Blackmore.

[4] Blackmore also brought claims against Hurricane City and the two police officers related to the lawfulness of the arrest, but those claims are not at issue in this order.

violation of state constitutional rights (Sixth Cause of Action), and for an illegal strip search (Third Cause of Action).[5]

Washington County and Ramirez (together "Washington County Defendants") filed Washington County Defendants' Motion for Summary Judgment and Memorandum in Support ("Motion")[6] seeking dismissal of Blackmore's claims against them. Blackmore filed her Opposition to the Motion,[7] and Washington County Defendants filed their Reply.[8]

There have been several additional filings relevant to the Motion. In the Reply, Washington County Defendants raised evidentiary objections to Blackmore's Opposition.[9] Blackmore then filed Plaintiffs' Response to Washington County's Evidentiary Objection Raised in its Reply and Objection to New Evidence[10] and the Washington County Defendants' filed a response.[11] Blackmore also filed a motion to strike declarations filed by Washington County Defendants to support their Motion,[12] which was further briefed with a response and reply.[13] Blackmore also filed a motion to strike Washington County Defendants' answer to the Amended

---

[5] Amended Complaint ¶¶ 92-95, 156-174, docket no. 122, filed February 14, 2022.

[6] Docket no. 76, filed March 14, 2023.

[7] Plaintiffs' Opposition to Washington County Defendants' Motion for Summary Judgment ("Opposition"), docket no. 94, filed April 13, 2023.

[8] Washington County Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Reply"), docket no. 106, filed May 5, 2023.

[9] *Id.* at 2-4.

[10] Plaintiffs' Response to Washington County's Evidentiary Objection Raised in its Reply and Objection to New Evidence, Docket no. 117, filed May 19, 2023.

[11] Response to Objection to New Evidence, docket no. 123, filed May 26, 2023.

[12] Motion to Strike Washington County Defendants' Declarations Submitted in Support of Their Motion for Summary Judgment ("Motion to Strike"), Docket no. 96, filed April 14, 2023.

[13] Washington County Defendants' Memorandum in Opposition to Plaintiffs' Motion to Strike, Docket no. 105, filed May 5, 2023; Blackmore's Reply to Washington County Defendants' Opposition to Plaintiffs' Motion to Strike, Docket no. 116, filed May 19, 2023.

Complaint,[14] which was also fully briefed with a response and reply.[15] The evidentiary

objections raised in the Reply[16] and in Blackmore's Response[17] are overruled.[18] And for the

reasons more fully articulated in the specific orders addressing these related motions,[19] the

Motion to Strike Declarations and Motion to Strike Answer were both denied.

The Motion is

- DENIED on Blackmore's third cause of action for illegal strip search because disputed facts remain and because, on this record, Ramirez is not entitled to qualified immunity;
- GRANTED on Blackmore's fourth cause of action against Washington County for failure to train because Blackmore has not provided sufficient evidentiary support for the claim;
- GRANTED IN PART on Blackmore's state law claims because she has an existing remedy under her federal claims that bars her state constitutional claims; and
- GRANTED on all of Vincent Blackmore's claims against the Washington County Defendants because admits he has no claims against them. His claims are dismissed.

**Contents**

I. Undisputed Material Facts ........................................................................................................ 4
II. Standard Of Review ............................................................................................................. 15
III. Discussion .......................................................................................................................... 16

---

[14] Plaintiffs' Motion to Strike Washington County Defendants' Answer to Amended Complaint Docket no 114, filed May 17, 2023.

[15] Washington County Defendants' Memorandum in Opposition to Plaintiffs' Motion to Strike Answer to Amended Complaint, docket no. 127, filed May 31, 2023; Plaintiffs' Reply to Washington County's Opposition to Plaintiffs' Motion to Strike, docket no. 130, filed June 14, 2023.

[16] Reply at 2-4.

[17] Plaintiffs' Response to Washington County's Evidentiary Objection Raised in its Reply and Objection to New Evidence, Docket no. 117 ("Response to Evidentiary Objection"), filed May 19, 2023.

[18] Washington County Defendants object to Blackmore's references to changes made in the errata to her deposition. These changes may be explored on cross examination at trial. The changes are not so controverted by Blackmore's original deposition testimony that they should be stricken from evaluation of the Motion. Additionally, Blackmore's objections contained in her Response to Evidentiary Objection are overruled because material objected to was appropriately responsive to material in Blackmore's Opposition and for the reasons stated in the Order Denying Motion to Strike Answer to Amended Complaint, docket no. 153, filed June 3, 2024.

[19] Order Denying [96] Motion to Strike Washington County Declarations Supporting Motion for Summary Judgment, docket no. 154, filed June 3, 2024; Order Denying Motion to Strike Answer to Amended Complaint, docket no. 153, filed June 3, 2024.

A.   Ramirez is Not Entitled to Qualified Immunity Because There Are Fact Disputes and Because An Unjustified Strip Search Violates Clearly Established Law ...... 17

1.   Viewed in Blackmore's Favor, the Summary Judgment Record Sufficiently Supports Blackmore's Allegation that she was Strip Searched. ................................................................................................................. 19

2.   An Unjustified Strip-Search of an Arrestee is a Clearly Established Violation of the Constitution. ................................................................. 23

B.   Blackmore's Fourth Claim Against Washington County Is Dismissed Because Blackmore Fails to Provide Evidence of a Policy or Widespread Practice of Illegal Strip-Searches ................................................................................................... 24

C.   Blackmore's State Law Claim is Dismissed Because Blackmore Fails to Meet the Requirements in *Spackman* ..................................................................................... 27

D.   Vincent Blackmore Admits He Has No Claims Against Washington County Defendants ........................................................................................................... 30

IV. Order .................................................................................................................................... 30

# I. UNDISPUTED MATERIAL FACTS[20]

1.   Around 1:30 a.m. on January 6, Hurricane City Police Officers Jared Carlson ("Carlson") and Eric DeMille ("DeMille") were dispatched to the My Place Hotel ("Hotel") in Hurricane, Utah to help a guest that was purportedly locked out of the Hotel.[21]

2.   Blackmore, an owner of the Hotel, responded to a request from Carlson to come to the Hotel lobby to deal with the locked-out guest.[22]

3.   After Blackmore's arrival to the Hotel lobby, there was a short, but heated interaction that involved the locked-out guest, Blackmore, Carlson, and DeMille; Blackmore was arrested during this interaction.[23]

---

[20] The following Undisputed Material Facts are taken from both Defendants' Motion and Plaintiffs' Opposition. Facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Material Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, some of these Undisputed Material Facts may not be material to the disposition of the Motion, but are nevertheless included to give background and context to the issues raised in the Motion. The facts have been restated in some instances. Additionally, facts 1-4 were not included in the briefing, but are important context for the chronology of the events that took place and have been added for context only. Facts 1-4 have been taken from the Amended Complaint, but do not impact the analysis in this Order.

[21] Amended Complaint ¶¶ 17-19, 21, docket no. 122, filed February 14, 2022.

[22] Amended Complaint ¶¶ 29, 31, docket no. 122, filed February 14, 2022.

[23] Amended Complaint ¶¶ 60-61, docket no. 122, filed February 14, 2022; *See generally* Officer Carlson Body Camera Footage ("Carlson Video"), Exhibit A to Defendants Jared Carlson, Eric DeMille, and Hurricane City's

4.      Blackmore was transported from the Hotel to Washington County's Purgatory Correctional Facility ("Jail") by Carlson to be booked on charges including disorderly conduct.[24]

5.      The Booking Sergeant at the Jail during the early morning hours of January 6, 2020, was Marc VanDam ("VanDam").[25] As a Sergeant, VanDam is a shift supervisor at the jail and usually oversees a few other deputies over a specific area of the jail.[26] Supervising the booking area, VanDam would supervise the admission of all arrestees and ensure appropriate searches and inventory of arrestee personal property.[27]

6.      According to VanDam, in January 2020 the booking process at the Jail ordinarily started with an arrestee being brought by deputies from the garage where police cars enter the Jail to an area just inside the door from the garage, known as pre-booking, where arrestees normally sat on a bench.[28]

7.      On January 6, 2020, VanDam was notified that Hurricane City was transporting a female to the Jail that had been kicking the cage in the police vehicle.[29] VanDam asked two

---

Motion (1) for Summary Judgment; and, Alternatively, (2) to Stay ("Hurricane City Defendants' Motion"), docket no. 86, filed April 7, 2023, at 01:33:43-01:44:39 (0:00:00-0:10:58) (exhibit run time is displayed for convenience in parenthesis next to video timestamps displayed in the video evidence itself) (Carlson Video filed conventionally).

[24] Amended Complaint ¶ 86, docket no. 122, filed February 14, 2022.

[25] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 31; Opposition, docket no. 94, filed April 13, 2023, at 17-18; Declaration of Marc Boyd VanDam in Support of Summary Judgment ("VanDam Decl."), docket no. 78, filed March 14, 2023, at ¶¶ 5-6.

[26] Motion, docket no. 76, filed March 14, 2023, at 10, undisputed fact ¶ 28; Opposition, docket no. 94, filed April 13, at 17; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 2.

[27] Motion, docket no. 76, filed March 14, 2023, at 10, undisputed fact ¶ 30; Opposition, docket no. 94, filed April 13, at 17; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 5.

[28] Motion, docket no. 76, filed March 14, 2023, at 6, undisputed fact ¶ 15; Opposition, docket no. 94, filed April 13, at 10; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 7.

[29] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 32; Opposition, docket no. 94, filed April 13, at 18; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 14.

female deputies, Officers Ramirez and Spotts, to report to booking to handle the female arrestee being brought to the jail.[30]

8.      In January 2020, Ramirez was a Deputy at the Jail.[31] As a Deputy, one of Ramirez's responsibilities was assisting with all aspects of booking arrestees into the jail.[32]

9.      Ramirez helped in the booking process of Blackmore.[33]

10.     Upon arrival at the Jail, Blackmore appeared upset and while being removed from the police car into the jail, Blackmore yelled "don't touch me" multiple times.[34] However, Blackmore was compliant as she was moved into the Jail.[35]

11.     According to VanDam, ordinarily in pre-booking an arrestee is searched, undergoes a medical review, and Jail staff conducts a personal property inventory.[36] Arrestees are not photographed in the pre-booking area.[37]

12.     According to Trevor Benson ("Benson"), a Lieutenant at Jail in charge of booking in January 2020, all inmates that came to the Jail were screened as part of the booking process

---

[30] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 32; Opposition, docket no. 94, filed April 13, at 18; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 14.

[31] Motion, docket no. 76, filed March 14, 2023, at 12, undisputed fact ¶ 40; Opposition, docket no. 94, filed April 13, at 20-21; Declaration of La-Norma Ramirez in Support of Motion for Summary Judgment ("Ramirez Decl."), docket no. 79, filed March 14, 2023 at ¶ 2; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 2.

[32] Motion, docket no. 76, filed March 14, 2023, at 12, undisputed fact ¶ 40; Opposition, docket no. 94, filed April 13, at 20-21; Ramirez Decl., docket no. 79, filed March 14, 2023, at ¶ 2.

[33] Motion, docket no. 76, filed March 14, 2023, at 15, undisputed fact ¶ 50; Opposition, docket no. 94, filed April 13, at 24-25; Ramirez Decl., docket no. 79, filed March 14, 2023, at ¶ 12; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 16.

[34] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 33, Opposition, docket no. 94, filed April 13, at 18; Deposition of Marc VanDam ("VanDam Depo."), docket no. 95-12 at 3, 27:21-28:7; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 15.

[35] Motion, docket no. 76, filed March 14, 2023, at 12, undisputed fact ¶ 36; Opposition, docket no. 94, filed April 13, at 19; VanDam Depo., docket no. 95-12 at 3-4, 28:23-29:1.

[36] Motion, docket no. 76, filed March 14, 2023, at 6, undisputed fact ¶ 16; Opposition, docket no. 94, filed April 13, at 10-11; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 8.

[37] Motion, docket no. 76, filed March 14, 2023, at 6, undisputed fact ¶ 16; Opposition, docket no. 94, filed April 13, at 10-11; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 8.

which involved taking an inventory of any property an arrestee brought to the Jail and a "pat-down" search, a "rub search," or a more intensive search.[38]

13.     Normally, the initial search of an arrestee occurs through a door towards the booking area of the Jail against a padded wall, an area called A-Hold.[39] Strip searches are not conducted at A-Hold.[40]

14.     As Lieutenant over booking, Benson generally would not personally supervise inmates at the jail.[41] The direct supervision of individual inmates at the Jail was the responsibility of sergeants and deputies at the Jail.[42]

15.     According to Benson, sometimes it was necessary to strip-search arrestees.[43]

16.     Benson is not aware of any other allegations of unconstitutional strip-searches occurring at the Jail other than Blackmore's allegation.[44]

17.     During the property inventory, a property "take form" is created.[45]

---

[38] Motion, docket no. 76, filed March 14, 2023, at 3-4, undisputed fact ¶¶ 2, 5, 8; Opposition, docket no. 94, filed April 13, at 4-6; Declaration of Trevor K. Benson in Support of Motion for Summary Judgment ("Benson Decl."), docket no. 77, filed March 14, 2023, at ¶¶ 3, 10.

[39] Motion, docket no. 76, filed March 14, 2023, at 6, undisputed fact ¶ 16; Opposition, docket no. 94, filed April 13, at 10-11; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 8.

[40] Motion, docket no. 76, filed March 14, 2023, at 6, undisputed fact ¶ 16; Opposition, docket no. 94, filed April 13, at 10-11; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 8.

[41] Motion, docket no. 76, filed March 14, 2023, at 3, undisputed fact ¶ 5; Opposition, docket no. 94, filed April 13, at 5-6; Declaration of Trevor K. Benson in Support of Motion for Summary Judgment ("Benson Decl."), docket no. 77, filed March 14, 2023, at ¶ 7.

[42] Motion, docket no. 76, filed March 14, 2023, at 3, undisputed fact ¶ 5; Opposition, docket no. 94, filed April 13, at 5-6; Declaration of Trevor K. Benson in Support of Motion for Summary Judgment ("Benson Decl."), docket no. 77, filed March 14, 2023, at ¶ 7.

[43] Motion, docket no. 76, filed March 14, 2023, at 4, undisputed fact ¶ 9; Opposition, docket no. 94, filed April 13, at 6-7; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 11.

[44] Motion, docket no. 76, filed March 14, 2023, at 8, undisputed fact ¶ 22; Opposition, docket no. 94, filed April 13, at 14; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 30.

[45] Motion, docket no. 76, filed March 14, 2023, at 7, undisputed fact ¶ 18; Opposition, docket no. 94, filed April 13, at 12; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 10; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 19; Purgatory Correctional Facility Pre-Booking Take, docket no. 95-6, filed April 13, 2023, at 1.

18.     According to VanDam, ordinarily once paperwork is completed, an arrestee leaves the pre-booking area and is moved to the booking area of the Jail.[46] In the booking area, Jail staff take an arrestee's fingerprints, updates personal information, and takes a photograph.[47] Upon completion of the booking process, an arrestee is uncuffed and placed in a holding cell in the booking area.[48]

19.     Ordinarily, while an arrestee is held in an intake cell in the booking area of the Jail during booking, the probable cause statement and other necessary paperwork is completed.[49]

20.     The booking area contains several holding cells where arrestees can be held.[50]

21.     With Blackmore, VanDam decided to bypass the Jail's ordinary pre-booking procedure and sent Blackmore directly to A Hold where there is a padded wall and where Blackmore was initially searched.[51]

22.     At A-Hold, Ramirez performed the "rub search" or "pat search" of Blackmore.[52]

23.     Jail records for Blackmore do not list Blackmore being strip searched.[53]

---

[46] Motion, docket no. 76, filed March 14, 2023, at 8, undisputed fact ¶ 20; Opposition, docket no. 94, filed April 13, at 14; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 12.

[47] Motion, docket no. 76, filed March 14, 2023, at 8, undisputed fact ¶ 20; Opposition, docket no. 94, filed April 13, at 14; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 12.

[48] Motion, docket no. 76, filed March 14, 2023, at 8, undisputed fact ¶ 20; Opposition, docket no. 94, filed April 13, at 14; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 12.

[49] Motion, docket no. 76, filed March 14, 2023, at 6-7, undisputed fact ¶ 17; Opposition, docket no. 94, filed April 13, at 11-12; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 8.

[50] Motion, docket no. 76, filed March 14, 2023, at 8, undisputed fact ¶ 21; Opposition, docket no. 94, filed April 13, at 14; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 13.

[51] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 33; Opposition, docket no. 94, filed April 13, at 18; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 15.

[52] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 34; Motion at 13-14, undisputed fact ¶ 43; Opposition, docket no. 94, filed April 13, at 18-19; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 16; Spillman Computer System Report jllog.num = 2392533, docket no. 77-3, filed March 14, 2023, at 18.

[53] Motion, docket no. 76, filed March 14, 2023, at 11, undisputed fact ¶ 34; Opposition, docket no. 94, filed April 13, at 18-19; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 16; Spillman Computer Records, docket no. 77-3, filed March 14, 2023, at 13-18.

24.      Ramirez does not have a memory of Blackmore.[54]

25.      Blackmore was escorted from A-Hold to Booking Cell Intake C and her handcuffs and piercings were removed.[55]

26.      Blackmore did not resist commands to physically move around the Jail.[56]

27.      A Pre-Booking Take form for Blackmore is dated January 6, 2020, at 0209 and lists personal property as 2 white socks, 1 pair of brown pants, 1 black shirt, 1 underwear, 1 bra, 1 grey sweatshirt, 1 cellphone, 5 earrings, and 2 rings.[57] The Pre-Booking Take Form was completed and signed by Ramirez.[58]

28.      The printed language on Blackmore's Pre-Booking Take form reads that "[a]ll the items listed on this form were taken during the Pre-Booking process on the date and time recorded on this form. No other items were taken at this time."[59]

29.      The place for an inmate signature on Blackmore's Pre-Booking Take form is blank and a box under the signature area next to the word "Combative" is marked with an "x."[60]

30.      A Receipt for Property Stored form for Blackmore is dated January 6, 2020, and contains a list of the same items as the Pre-Booking Take form: 2 white socks, 1 brown pants, 1

---

[54] Motion, docket no. 76, filed March 14, 2023, at 13-14, undisputed fact ¶ 43; Opposition, docket no. 94, filed April 13, at 21; Ramirez Decl., docket no. 79, filed March 14, 2023, at ¶ 5.

[55] Motion, docket no. 76, filed March 14, 2023, at 6-7, 11, undisputed fact ¶¶ 17, 35; Opposition, docket no. 94, filed April 13, at 11-12, 18-19;VanDam Decl., docket no. 78, filed March 14, 2023, at ¶¶ 8, 17; Spillman Computer System Report jllog.num = 2392533, docket no. 77-3, filed March 14, 2023, at 18.

[56] Motion, docket no. 76, filed March 14, 2023, at 12, undisputed fact ¶ 36; Opposition, docket no. 94, filed April 13, at 19; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 18.

[57] Purgatory Correctional Facility Pre-Booking Take, docket no. 77-3, filed March 14, 2023, at 10; Motion, docket no. 76, filed March 14, 2023, at 9, undisputed fact ¶ 25; Opposition, docket no. 94, filed April 13, at 15; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 21.

[58] Deposition of La-Norma Ramirez taken June 29, 2022, docket no. 95-15, at 83:5-84:9; Purgatory Correctional Facility Pre-Booking Take, docket no. 77-3, filed March 14, 2023, at 10.

[59] Purgatory Correctional Facility Pre-Booking Take, docket no. 77-3, filed March 14, 2023, at 10.

[60] Purgatory Correctional Facility Pre-Booking Take, docket no. 77-3, filed March 14, 2023, at 10.

black shirt, 1 underwear, 1 bra, 1 grey sweatshirt, 1 cellphone with pink case, 5 earrings, and 2 grey rings.[61]

31.     The location for each item of Blackmore's personal property listed on the Receipt for Property Stored form is "Locker 168."[62]

32.     The Receipt for Property Stored form for Blackmore has a notation of "Property received by" with a signature over the printed name "Fitting, Jesse."[63]

33.     A Receipt for Property Returned form for Blackmore lists the same personal property items as the Pre-Booking Take form and the Receipt for Property Stored form including: 2 white socks, 1 brown pants, 1 black shirt, 1 underwear, 1 bra, 1 grey sweatshirt, 1 cellphone with pink case, 5 earrings, and 2 grey rings.[64] The location listed for all of Blackmore's property listed on the Receipt for property Returned is "Locker 168/Property Room."[65]

34.     Jail Nurse Lori Jardine ("Jardine"), completed a medical intake form for Blackmore.[66] Under Observations for Behavior, Jardine did not check the boxes for hostile,

---

[61] Washington County Corrections Receipt for Property Stored, docket no. 77-3, filed March 14, 2023, at 1; Motion, docket no. 76, filed March 14, 2023, at 9, undisputed fact ¶ 25; Opposition, docket no. 94, filed April 13, at 15; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 21.

[62] Washington County Corrections Receipt for Property Stored, docket no. 77-3, filed March 14, 2023, at 1.

[63] Washington County Corrections Receipt for Property Stored, docket no. 77-3, filed March 14, 2023, at 1.

[64] Washington County Corrections Receipt for Property Returned form, docket no. 77-3, filed March 14, 2023, at 2; Motion, docket no. 76, filed March 14, 2023, at 9, undisputed fact ¶ 25; Opposition, docket no. 94, filed April 13, at 15; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 21.

[65] Washington County Corrections Receipt for Property Returned form, docket no. 77-3, filed March 14, 2023, at 2.

[66] Motion, docket no. 76, filed March 14, 2023, at 10, undisputed fact ¶ 27; Opposition, docket no. 94, filed April 13, at 17; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 2, Intake Form, docket no. 76-2, filed March 14, 2023, at 1.

agitated, uncooperative, or confused and only marked the box for "unremarkable."[67] Jardine also

checked the box for "Detox Observation" under the Medical Housing Recommendations.[68]

      35.    In January 2020, the Jail utilized the Spillman Corrections Management computer

system to manage and track the entry of arrest, offense information, risk assessments, medical

assessments, and jail events.[69]

      36.    The documented timeline of events involving Blackmore at the Jail on January 6,

2020, is as follows:

- 02:03 am – Blackmore's booking process began;[70]

- 02:05 am – an "Inmate Booking" Jail Event Log was created with location of "Initial Intake" with Officer Carlson as the responsible officer;[71]

- 02:09 am – a "Pre-Booking Take" form for Blackmore was completed by Ramirez;[72]

- 02:32 am – a Hurricane City Police Department Warrantless Arrest Probable Cause Statement created by Officer Carlson for Blackmore was time stamped;[73]

- 03:08 am – a Receipt for Property Stored form was created;[74]

---

[67] Intake Form, docket no. 76-2, filed March 14, 2023, at 2-3.

[68] Intake Form, docket no. 76-2, filed March 14, 2023, at 3.

[69] Motion, docket no. 76, filed March 14, 2023, at 4, undisputed fact ¶ 7; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 8; Washington County Sheriff's Office Corrections Division Policy Manual ("Policy Manual"), docket no. 77-2, filed March 14, 2023.

[70] Motion, docket no. 76, filed March 14, 2023, at 9, undisputed fact ¶ 24; Opposition, docket no. 94, filed April 13, 2023, at 14-15; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 22; Spillman Computer System Report jllog.num = 2392533, docket no. 77-3, filed March 14, 2023, at 18.

[71] Spillman Computer System Report jllog.num = 2392495, docket no. 77-3, filed March 14, 2023, at 13.

[72] Purgatory Correctional Facility Pre-Booking Take form, docket no. 77-3, filed March 14, 2023, at 10; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 22.

[73] Hurricane City Police Department Warrantless Arrest Probable Cause Statement BK# 221046, docket no. 77-3, filed March 14, 2023, at 6.

[74] Washington County Corrections Receipt for Property Stored, docket no. 77-3, filed March 14, 2023, at 1; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 22.

- 03:09 am – a medical intake form was completed by Jail Nurse Lori Jardine;[75]

- 03:11 am – an "Inmate Cell Change" Jail Event Log lists a new location for Blackmore as "Intake C-01 (Lower Tier Lower Bunk)";[76]

- 03:11 am – a "Returned to Assigned Location" Jail Event Log listed "Intake C" as the location for Blackmore;[77]

- 03:25 am - 03:30 am – Blackmore was fingerprinted;[78]

- 03:30 am – a Release and Promise to Appear form notes a release time for Blackmore of 3:30 am;[79]

- 03:33 am – a "Released on Cash Bail" Jail Event Log is created;[80]

- 03:36 am – A Release and Hold Harmless Agreement[81] and a Receipt for Property Returned form were time-stamped.[82]

37.     In total, Blackmore was at the Jail for roughly 90 minutes.[83]

38.     The Jail had comprehensive policies in place in January 2020 ("Jail Policy") that address all aspects of an inmate's incarceration, including the booking process.[84]

---

[75] Intake Form, docket no. 76-2, filed March 14, 2023, at 1.

[76] Spillman Computer System Report jllog.num = 2392505, docket no. 77-3, filed March 14, 2023, at 15.

[77] Spillman Computer System Report jllog.num = 2392506, docket no. 77-3, filed March 14, 2023, at 16.

[78] Fingerprint Card, docket no. 77-3, filed March 14, 2023, at 11.

[79] Washington County Sheriff's Office and Purgatory Correctional Facility Release and Promise to Appear form, docket no. 77-3, filed March 14, 2023, at 3.

[80] Spillman Computer System Report jllog.num = 2392511, docket no. 77-3, filed March 14, 2023, at 17.

[81] Washington County Corrections Release and Hold Harmless Agreement, docket no. 77-3, filed March 14, 2023, at 4.

[82] Washington County Corrections Receipt for Property Returned form, docket no. 77-3, filed March 14, 2023, at 2; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 22.

[83] Motion, docket no. 76, filed March 14, 2023, at 12, undisputed fact ¶ 39; Opposition, docket no. 94, filed April 13, 2023, at 20-21; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 21.

[84] Motion, docket no. 76, filed March 14, 2023, at 3, undisputed fact ¶ 6; Opposition, docket no. 94, filed April 13, 2023, at 6; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 8; Washington County Sheriff's Office Corrections Division Policy Manual ("Policy Manual"), docket no. 77-2, filed March 14, 2023.

39.     Jail Policy includes separate definitions for the following types of searches: frisk searches (a.k.a. pat searches), rub searches, strip searches, visual body cavity searches, and digital body cavity searches.[85]

40.     Jail Policy dictates that all arrestees entering the jail receive an initial search by Jail staff.[86] According to Policy, the initial search of an arrestee at Jail entry is a "rub search" unless a more intrusive search is required.[87] Policy instructs that more intrusive initial searches were required if there is a "reasonable suspicion that the arrestee is in possession of criminal evidence, a weapon, or other item of contraband which would present an immediate threat to the safety or security of the" Jail or "[r]eason to believe that the arrestee may have medical, mental health, or suicide-related problems which indicate the need for a more intrusive search."[88]

41.     Jail Policy directs that "[a]rrestees brought to the jail should not be strip or visual body cavity searched absent an individualized determination of reasonable suspicion to believe that the arrestee is in possession of:" a weapon, controlled substance, criminal evidence, or other contraband which presents a threat to the safety of persons in the Jail or the security of the Jail.[89]

42.     Jail Policy defines a Strip Search as a "search which involves the visual inspection of a disrobed subject. . . . Visual inspection of a subject in undergarments may be considered a strip search."[90]

---

[85] Policy Manual, docket no. 77-2, filed March 14, 2023, at 15.

[86] Policy Manual, docket no. 77-2, filed March 14, 2023, at 19; Motion, docket no. 76, filed March 14, 2023, at 6-7, undisputed fact ¶ 17; Opposition, docket no. 94, filed April 13, 2023, at 11-12; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 9.

[87] Policy Manual, docket no. 77-2, filed March 14, 2023, at 19; Motion, docket no. 76, filed March 14, 2023, at 6-7, undisputed fact ¶ 17; Opposition, docket no. 94, filed April 13, 2023, at 11-12; VanDam Decl., docket no. 78, filed March 14, 2023, at ¶ 9.

[88] Policy Manual, docket no. 77-2, filed March 14, 2023, at 19.

[89] Policy Manual, docket no. 77-2, filed March 14, 2023, at 19.

[90] Policy Manual, docket no. 77-2, filed March 14, 2023, at 15.

43.     Jail Policy defines a Visual Body Cavity Search as a "strip search that involves a visual inspection of the anus and/or genital area. Generally, requires the subject to bend over and spread the cheeks of the buttocks, to squat, and/or to otherwise assume a posture which more fully exposes body cavity orifices."[91]

44.     It is Jail Policy to document any search more intrusive than a rub search in the Spillman Computer System including, the date time, and location of the search; the name of the person searched, the name of officers involved in the search, the type of search conducted, and the information justifying a search more intrusive that a rub search.[92]

45.     Jail Policy mandates that the personal property of prisoners at the Jail be taken at admittance except for a shirt, pants, and undergarments.[93] Prior to a prisoner being moved from Intake to Housing, all remaining clothing must be surrendered and replaced with Jail clothing.[94]

46.     Jail Policy directs for Prisoners' clothing and other property to be searched before it is placed into storage and may be searched even if the property is not going to be stored in the jail.[95]

47.     Jail Policy requires staff to create an inventory list of the prisoner's personal property.[96] The inventory list must be signed by the officer conducting the inventory and the

---

[91] Policy Manual, docket no. 77-2, filed March 14, 2023, at 15.

[92] Policy Manual, docket no. 77-2, filed March 14, 2023, at 16; Motion, docket no. 76, filed March 14, 2023, at 6, 15 undisputed fact ¶¶ 13, 48; Opposition, docket no. 94, filed April 13, 2023, at 9, 24; Benson Decl., docket no. 77, filed March 14, 2023, at ¶ 15; Ramirez Decl., docket no. 79, filed March 14, 2023, at ¶ 10.

[93] Policy Manual, docket no. 77-2, filed March 14, 2023, at 9.

[94] Policy Manual, docket no. 77-2, filed March 14, 2023, at 9.

[95] Policy Manual, docket no. 77-2, filed March 14, 2023, at 9.

[96] Policy Manual, docket no. 77-2, filed March 14, 2023, at 9.

prisoner should be requested to sign the form.[97] If a prisoner refuses to sign the inventory form, a second officer should verify and sign the form.[98]

48.     Jail Policy requires a "written inventory and receipt for the money and property taken" to "safeguard jail staff from false claims of theft;" "[p]rotect prisoners from loss of property;" and to "document the process of receiving and releasing custody of prisoners' money and property."[99]

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[100] A disputed issue of fact is "genuine" when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[101] or in favor of the nonmoving party.[102] Facts are material if they might "affect the outcome of the suit under the governing law."[103] In evaluating a summary judgment motion, the factual record and reasonable inferences drawn are viewed in a light most favorable to the nonmovant.[104]

A party seeking summary judgment bears the "initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[105] If the moving party meets their initial burden, "the burden shifts to the

---

[97] Policy Manual, docket no. 77-2, filed March 14, 2023, at 9.

[98] Policy Manual, docket no. 77-2, filed March 14, 2023, at 9.

[99] Policy Manual, docket no. 77-2, filed March 14, 2023, at 10.

[100] Fed. R. Civ. P. 56.

[101] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[102] *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[103] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[104] *Adler*, 144 F.3d at 670.

[105] *Id.* at 670-71.

nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[106] Speculation and conjecture are not enough—"the party opposing the motion for summary . . . must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."[107] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment.[108]

### III. DISCUSSION

Blackmore[109] brings three claims against Ramirez and Washington County: Blackmore's third cause of action for illegal strip search in violation of the Fourth and Fourteenth Amendments to the Constitution brought against Ramirez under 42 U.S.C. § 1983;[110] Blackmore's fourth cause of action for failure to train or supervise brought against Washington County for defective policies, customs or practices of the sheriff's office;[111] and Blackmore's sixth cause of action against Ramirez and Washington County for violation of state civil rights.[112]

In the Motion, Washington County Defendants argue that all of Blackmore's claims should be dismissed because: (1) Ramirez is shielded by qualified immunity on Blackmore's unlawful strip search claim;[113] (2) that Washington County cannot be held liable for failure to

---

[106] *Id.* at 671 (cleaned up).

[107] *Universal Money Centers, Inc.*, 22 F.3d at 1529 (cleaned up).

[108] *Anderson*, 477 U.S. at 252.

[109] As described more fully *infra* at Section III.D, Vincent Blackmore is also a Plaintiff in this suit, but admits that he has no standing to bring claims against Ramirez or Washington County so this Order focuses on Danyale Blackmore's (referred to herein as "Blackmore") claims against Ramirez and Washington County.

[110] Amended Complaint, docket no. 122, filed May 25, 2023 (filed effective February 14, 2022), at ¶¶ 156-174.

[111] Amended Complaint, docket no. 122, filed May 25, 2023 (filed effective February 14, 2022), at ¶¶ 175-191.

[112] Amended Complaint, docket no. 122, filed May 25, 2023 (filed effective February 14, 2022), at ¶¶ 205-215.

[113] Motion, docket no. 76, filed March 14, 2023, at 19.

train because Blackmore cannot identify a defective official county policy and because the county did not act with deliberate indifference;[114] (3) that Blackmore's state law claim fails because Blackmore cannot meet the test to recover set forth by the Utah Supreme Court;[115] and (4) that all of Vincent Blackmore's claims should be dismissed because they do not involve him.[116]

The Motion is GRANTED IN PART and DENIED IN PART. Blackmore's third cause of action for unlawful strip search is not dismissed because there are fact disputes and Ramirez is not entitled to qualified immunity at this stage. Blackmore's fourth cause of action is dismissed because Blackmore has insufficiently demonstrated widespread unlawful strip searches and cannot show the county was deliberately indifferent. Blackmore's state law claims are dismissed because she has an existing remedy that prevents bringing the state law claim. And all of Vincent Blackmore's claims are dismissed against Washington County Defendants because he makes no claims involving him.

### A. Ramirez is Not Entitled to Qualified Immunity Because There Are Fact Disputes and Because An Unjustified Strip Search Violates Clearly Established Law

Qualified immunity protects government officials "performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."[117] When a defendant asserts qualified immunity as an affirmative defense, "it is the plaintiff's burden to establish (1) the defendant violated a constitutional right, and (2) the right was clearly established at the

---

[114] Motion, docket no. 76, filed March 14, 2023, at 28-29, 31-33.

[115] Motion, docket no. 76, filed March 14, 2023, at 28-29, 31-33.

[116] Motion, docket no. 76, filed March 14, 2023, at 18.

[117] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

time."[118] Once a plaintiff establishes a constitutional violation that is clearly established, the traditional summary judgment burden returns to the defendant, who must prove there are no material facts in dispute and entitlement to summary judgment as a matter of law.[119]

A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[120] To show a right is clearly established does not require a perfectly precise on-point precedent for the exact action, but "in the light of pre-existing law the unlawfulness must be apparent."[121] "Reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits" can be used to "demonstrate that a constitutional right is clearly established."[122]

The factual record used at summary judgment to evaluate whether a plaintiff has demonstrated a violation of a constitutional right and whether that right has been clearly established are the facts "[t]aken in the light most favorable to the" plaintiff.[123] "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts."[124] "Summary judgment is inappropriate where there is a genuine dispute over a material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[125]

---

[118] *Harrell v. Ross*, No. 23-8035, 2024 WL 123483, at *3 (10th Cir. Jan. 11, 2024).

[119] *Harte v. Bd. of Commissioners of Cnty. of Johnson, Kansas*, 864 F.3d 1154, 1199 (10th Cir. 2017) (Moritz, J., separate opinion).

[120] *Anderson*, 483 U.S. at 640.

[121] *Id.*

[122] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (cleaned up) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)).

[123] *York v. City of Las Cruces*, 523 F.3d 1205, 1209 (10th Cir. 2008) (quotation marks and citation omitted).

[124] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[125] *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018).

Washington County Defendants argue Blackmore's third cause of action for an illegal strip-search claim should be dismissed because Ramirez is protected by qualified immunity. Specifically, Washington County Defendants argue that the evidence shows no constitutional violation occurred because "Ramirez did not strip-search [Blackmore],"[126] and because even if she did, this violation was not clearly established at the time.[127] Washington County Defendants' arguments both fail because the record, viewed in Blackmore's favor, is sufficient to allow a reasonable jury to find the Ramirez strip searched Blackmore, and because an unjustified strip search is a violation of clearly established law.

### 1. Viewed in Blackmore's Favor, the Summary Judgment Record Sufficiently Supports Blackmore's Allegation that she was Strip Searched.

Washington County Defendants claim no constitutional violation occurred because the record overwhelmingly establishes that no strip search occurred.[128] Blackmore, in contrast, claims that she was strip searched.[129] The Tenth Circuit has explained that "[g]enerally speaking, uncorroborated testimony . . . may alone be sufficient to avoid summary judgment."[130] In this case, Blackmore's testimony alone is sufficient to defeat summary judgment.

Washington County Defendants argue that Blackmore's testimony is overwhelmed by the rest of the record evidence to the point where it is "so one-sided that [Washington County Defendants] must prevail as a matter of law."[131] The record and reasonable inferences made in

---

[126] Motion, docket no. 76, filed March 14, 2023, at 20.

[127] Motion, docket no. 76, filed March 14, 2023, at 20-25.

[128] Motion, docket no. 76, filed March 14, 2023, at 20-21.

[129] Blackmore Depo., docket no. 95-4, filed April 13, 2023, at 33:8 (Errata), 33:23-24, 24:9-25:16. Washington County Defendants objected to Blackmore's changes to her deposition, but this objection was overruled. *See supra* at 3 n.18.

[130] *Baer v. Salt Lake City Corp.*, 705 F. App'x 727, 734 (10th Cir. 2017).

[131] *See id.*; Reply at 11, docket no. 106, filed May 5, 2023.

favor of Blackmore do not conclusively resolve this fact issue, and viewed in Blackmore's favor, sufficiently support her allegation that she was unlawfully strip searched. Washington County Defendants assert that "Plaintiff never removed her clothing at the Jail."[132] Beyond Blackmore's testimony, Jail forms and photographic evidence in this case contradicts the Washington County Defendants' argument. At the time of her arrest, Carlson's bodycam footage shows Blackmore was wearing a grey, long-sleeved hooded shirt underneath a black short-sleeved shirt:


[133]

In contrast, Blackmore's booking photo taken at the Jail shows Blackmore without the grey long-sleeved hooded shirt beneath the black short-sleeved shirt:

---

[132] Reply at 15, docket no. 106, filed May 5, 2023.

[133] Screenshot taken from Carlson Video, Exhibit A to Hurricane City Defendants' Motion, docket no. 86, filed April 7, 2023, at 1:42:37 (0:08:55). Blackmore was placed into Carlson's car still wearing the hooded shirt underneath the black short-sleeved shirt. The photograph stills from Carlson's bodycam footage was not submitted in connection with this Motion, but these materials are before the court in connection with the Hurricane City Defendants' Motion. The outcome of this Motion would not change without these screenshots, but they clearly demonstrate why summary judgment is not appropriate.



134

This screenshot and booking photo demonstrate at the very least that Blackmore removed the grey long-sleeved sweatshirt and belie the Washington County Defendant's assertion that Blackmore never removed any clothing. The photographs support Blackmore's assertion that she was asked to remove clothing and unlawfully strip searched. Ramirez, the deputy allegedly involved, has no specific memory of Blackmore to dispute Blackmore's testimony.[135]

Jail forms from Blackmore's booking also support her allegation. A "Pre-Booking Take" form lists 2 socks, 1 pants, 1 shirt, 1 underwear, 1 bra, 1 sweatshirt, 5 piercings, and 2 rings and the form indicates that "[a]ll the items listed on this form were taken during the Pre-Booking process on the date and time recorded on this form. No other items were taken at this time."[136] The Take form was completed and signed by Ramirez.[137] A Receipt for Property Stored lists the same clothing and property items as the Take form and states that the "personal property was

---

[134] Danyale Blackmore Booking Photo, docket 86-8, filed April 7, 2023.

[135] Undisputed Material Facts, ¶ 24, *supra,* at 8.

[136] Docket no. 95-6, filed April 13, 2023.

[137] Undisputed Material Facts, ¶ 27, *supra,* at 9.

accepted into storage."[138] The form is signed with Jesse Fitting as the receiver of Blackmore's clothing and personal property.[139] A "Receipt for Property Returned" form again lists all the same items of clothing and personal property and indicates that items "were returned" to Blackmore.[140] The form indicates the property was returned by Jesse Fitting and received by Blackmore; Fitting and Blackmore both signed the form.[141] The reasonable inferences drawn from these forms in favor of Blackmore support that Blackmore's clothing, including her shirt, sweatshirt, underwear, bra, socks, and pants, was taken, stored, and returned by the Jail. These forms support Blackmore's allegation that she was strip searched.

Additionally, Blackmore's son's girlfriend was at the Jail when Blackmore was released and noticed that Blackmore left the jail with a black bag and did not appear to be wearing a bra at the time she was released.[142] This testimony is consistent with the photos showing Blackmore removed clothing and supports Blackmore's allegation. In sum, there is sufficient evidence that a reasonable jury could use to find that Blackmore was required to remove her clothing for a strip-search. As explained in the section below, a strip search without justification is a constitutional violation. Blackmore has sufficiently supported her allegation that Ramirez violated her constitutional rights and satisfies the first prong of her burden to overcome Ramirez's assertion of qualified immunity.

---

[138] Docket no. 95-7, filed April 13, 2023.

[139] Id.

[140] Docket no. 95-8, filed April 13, 2023.

[141] Id.

[142] Deposition of McKenna Daughton taken February 13, 2023, docket no. 95-5, filed April 13, 2023, at 6:11-7:17, 29:7-11.

2. **An Unjustified Strip-Search of an Arrestee is a Clearly Established Violation of the Constitution.**

The Tenth Circuit has explained that "it is beyond cavil that the Fourth Amendment prohibits unreasonable searches by corrections officers; . . . indiscriminate strip and cavity searches of minor offenders not placed in the general jail population and not suspected of harboring weapons, drugs, or contraband are not reasonable."[143] Moreover, the Tenth Circuit has held that the law is clearly established that a "detainee who is not placed in the general prison population cannot be strip searched if the searching officer does not at least have reasonable suspicion that the detainee possesses concealed weapons, drugs, or contraband."[144]

A strip search is a broad term that encompasses the viewing of a person in a state of undress.[145] This is reflected in the Jail's own policy which defines a strip search as a "search which involves the visual inspection of a disrobed subject. . . . Visual inspection of a subject in undergarments may be considered a strip search."[146] The Jail's own policies tacitly recognize the controlling law on strip searching and explain that "strip searches [are] highly intrusive. Because they are intrusive, ***the courts have previously held*** that arrestees cannot be subjected to strip searches unless there is individualized or reasonable suspicion that a prisoner has contraband."[147]

A strip search without justification is unreasonable and violates the Fourth Amendment.[148] Washington County Defendants do not allege that Blackmore satisfied either

---

[143] *Baer*, 705 F. App'x 727, 733 (10th Cir. 2017) (internal citations omitted).

[144] *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008).

[145] *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 374, 129 S. Ct. 2633, 2641, 174 L. Ed. 2d 354 (2009) (describing requiring a student to remove clothing down to underwear and to pull her bra and underwear away from her body as a strip search); *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2010) (requiring mother to expose breasts in presence of female cadet while pumping her breasts to provide milk for her child was unreasonable search).

[146] Policy Manual, docket no. 77-2 at 15, filed March 14, 2023.

[147] Policy Manual, docket no. 77-2 at 17, filed March 14, 2023 (emphasis added).

[148] *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008).

recognized justification for a strip search—Blackmore was not placed into the general Jail population[149] and there is no evidence in the record that Washington County Defendants suspected Blackmore of having any contraband on her person. Instead, the Washington County Defendants completely deny that Blackmore removed any of her clothing,[150] and have not alleged any justifications for a strip search of Blackmore. As explained above, some record evidence at this stage supports Blackmore's allegation that she was strip searched without justification, which would be a violation of a clearly established right under the Fourth Amendment. Accordingly, Blackmore satisfies the second prong of her burden to overcome Ramirez's assertion of qualified immunity.

Having satisfied her burden to overcome Ramirez's assertion of qualified immunity, the burden shifts back to Ramirez to demonstrate there are no material facts in dispute and that she is entitled to summary judgment as a matter of law. Because of the factual dispute about the strip search of Blackmore, Ramirez cannot show the lack of material fact disputes as required to obtain summary judgment. Washington County Defendant's Motion on Blackmore's Third Cause of Action for an illegal strip search is DENIED.

## B. Blackmore's Fourth Claim Against Washington County Is Dismissed Because Blackmore Fails to Provide Evidence of a Policy or Widespread Practice of Illegal Strip-Searches

A local government or municipality may be liable under 42 U.S.C. § 1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."[151] However, local governments are not vicariously liable for

---

[149] Spillman Computer System Reports, jllog.num = 2392495, 2449420, 2392505, 2392506, 2392511 docket no. 77-3, filed March 14, 2023, at 13-17 (showing Blackmore at intake and booking before being released on bail).

[150] Motion, docket no. 76, filed March 14, 2023, at 19.

[151] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citation omitted).

employee actions and are "responsible only their own illegal acts."[152] A plaintiff injured by a "deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably."[153] Local government liability under § 1983 must be based on injuries caused by "official municipal policy."[154] "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[155]

A failure to train employees to avoid violating the rights of the public can create municipal liability.[156] However, because municipal culpability is "most tenuous" for failure to train claims, a municipality's training failure "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact."[157] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[158] If a policy itself is not unconstitutional, a plaintiff will need to show "considerably more proof than [a] single incident" to demonstrate "both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."[159] Ordinarily, a plaintiff must show "a pattern of similar constitutional violations by untrained employees" to "demonstrate deliberate indifference

---

[152] *Id.* (cleaned up) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

[153] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 406–07 (1997).

[154] *Connick,* 563 U.S. at 60.

[155] *Id.* at 61.

[156] *Id.*

[157] *Id*.

[158] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

[159] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

for purposes of failure to train."[160] In *Connick v. Thompson*, the Supreme Court held that four overturned cases for Brady violations were insufficient to put the district attorney on notice of a failure to train because the violations were not similar enough to the alleged violation.[161]

Blackmore does not allege any specific policy that is constitutionally deficient created by lawmakers and there are no allegations that a policymaker's actions caused Blackmore's injuries.[162] Washington County provides documentation of policies compliant with constitutional norms.[163] Instead, Blackmore argues that there is a widespread practice of unconstitutional strip searches.[164] But Blackmore points to no other similar occurrences of allegedly unlawful strip searches. Instead, Blackmore alleges that Ramirez told her that strip searches were a normal practice at the Jail.[165] There is no evidence of a widespread practice of unlawful strip searches other than Blackmore's recounting of what Ramirez is alleged to have said during Blackmore's booking. And Ramirez's comments, if said, are not evidence that Washington County had notice of or condoned improper strip searches as would require correction or training.

Trevor Benson, a Lieutenant in charge of booking at the Jail at the time of Blackmore's booking, noted he was not aware of a single additional allegation of an unconstitutional strip search.[166] Nor has Blackmore offered any evidence of another search similar to hers. Blackmore's offered evidence of a widespread practice is insufficient to show that Washington

---

[160] *Connick*, 563 U.S. at 62.

[161] *Id.*

[162] Opposition, docket no. 94, filed April 13, 2023, at 42-43.

[163] Undisputed Material Facts, ¶¶ 38-48, *supra,* at 12-14.

[164] Opposition, docket no. 94, filed April 13, 2023, at 42-43.

[165] Opposition, docket no. 94, filed April 13, 2023, at 42-43.

[166] Benson Decl., docket no. 77, filed March 14, 2023, at ¶¶ 3, 30.

County has notice of an issue and then was deliberately indifferent to the issue by failing to train county employees.

Because Blackmore has failed to produce evidence of a widespread practice of unlawful strip searches at the Jail and has not pointed to any policy that is unconstitutional, Blackmore's fourth claim against Washington County for failure to train is DISMISSED.

### C. Blackmore's State Law Claim is Dismissed Because Blackmore Fails to Meet the Requirements in *Spackman*

Blackmore alleges that the Washington County Defendants violated Section 9 of Article I of the Utah Constitution when she was "subjected to an illegal public strip search . . . ."[167] Section 9 states that "Persons arrested or imprisoned shall not be treated with unnecessary rigor."[168] To "ensure that damage actions are permitted only under appropriate circumstances," the Utah Supreme Court has explained that a party bringing a private suit for damages under the state constitution must: (1) "establish that he or she suffered a "flagrant" violation of his or her constitutional rights"; (2) "establish that existing remedies do not redress his or her injuries"; and (3) "establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."[169] The *Spackman* court specifically noted that a plaintiff's establishment that existing remedies are inadequate is "meant to ensure that courts use the common law remedial power cautiously and in favor of existing remedies."[170] A careful analysis of the Amended Complaint and Blackmore's arguments demonstrate that Blackmore's

---

[167] Amended Complaint, docket no. 122, filed May 25, 2023 (backdated to February 14, 2022), at ¶¶ 210-215.

[168] Utah Const. art. I, § 9.

[169] *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 24-25, 16 P.3d 533, 538.

[170] *Id.* at ¶ 24.

sixth claim against the Washington County Defendants under the Utah Constitution fails to meet the requirements of *Spackman.*

Blackmore cannot establish her rights were flagrantly violated under the Utah Constitution. This first prong under *Spackman* requires "that a defendant must have violated clearly established constitutional rights of which a reasonable person would have known."[171] A right is clearly established if the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[172] There is no case authority in Utah establishing that a strip search of an arrestee violates the unnecessary rigor provision of the Utah Constitution.

All of Blackmore's arguments about the flagrant violation of her rights based on the alleged strip search point to federal case law interpreting the federal Constitution. This implicitly reveals that the state constitutional claim against the Washington County Defendants is wholly duplicative of the federal § 1983 claim. Blackmore explains that the strip search was improper because Blackmore was "clearly not going into the general jail population, and who was not suspected of having drugs, weapons, or contraband."[173] But Blackmore points to no Utah authority establishing these justifications for strip searches; instead, Blackmore cites federal Tenth Circuit caselaw establishing these reasons as justification for strip searches under the federal Fourth Amendment.[174] Additionally, while claiming that the right to "be free of an unnecessary, illegal strip search were clearly established decades ago," Blackmore points to no Utah authority on this issue. And while the Utah Supreme Court has justified strip searches based

---

[171] *Spackman*, 2000 UT 87, ¶ 23.

[172] *Id.*

[173] Opposition, docket no. 94, filed April 13, 2023, at 48.

[174] *Archuleta v. Wagner*, 523 F.3d 1278, 84 (10th Cir. 2008).

on a reasonable suspicion of contraband on the person searched, the analysis was evaluated under the Fourth Amendment of the U.S. Constitution and did not relate to Section 9.[175] No one has cited authority in which the Utah courts have evaluated the strip search of an arrestee under Section 9 of the Utah Constitution.

Additionally, Blackmore cannot satisfy the second *Spackman* prong that "existing remedies do not redress . . . her injuries."[176] In some cases, courts have allowed parallel state claims to continue because there is the possibility that a jury could find for the plaintiff on a state claim even if the jury did not find for the plaintiff on a parallel federal claim.[177] In other cases, courts have dismissed state claims where a state claim does not provide redress beyond the § 1983 claim.[178] If a plaintiff does not make a showing that a § 1983 claim cannot provide recovery for all alleged injuries, dismissal of the state claim is appropriate.[179] Here, Blackmore does not explain how her § 1983 claim would not redress her alleged injuries. And given that Washington County Defendants have argued only that the alleged strip search did not occur rather than offering justifications for a strip search, the possibility that there could be different outcomes under a state claim and § 1983 claim disappear. Accordingly, Blackmore's sixth claim against the Washington County Defendants for violation of the Utah Constitution is Dismissed.

---

[175] *State v. Pena*, 869 P.2d 932, 941 (Utah 1994), holding modified by *State v. Levin*, 2006 UT 50, 144 P.3d 1096

[176] *Spackman*, 2000 UT 87, ¶ 24.

[177] *Finlinson v. Millard Cnty.*, 455 F. Supp. 3d 1232, 1245 (D. Utah 2020).

[178] *Nielson v. City of S. Salt Lake*, No. 2:06-CV-335-CW, 2009 WL 3562081, at *9 (D. Utah Oct. 22, 2009) ("The state constitutional claims do not provide for any further redress than Nielson can obtain under § 1983. Accordingly, those claims are dismissed.");

[179] *Cavanaugh v. Woods Cross City*, No. 1:08-CV-32-TC-BCW, 2009 WL 4981591, at *6 (D. Utah Dec. 14, 2009), aff'd, 625 F.3d 661 (10th Cir. 2010) ("Given the Utah Supreme Court's reluctance to expand direct remedies under the Utah Constitution, the court will not create such a remedy here where the plaintiff has not made a showing that § 1983 cannot provide recovery for all alleged injuries."); *Hoggan v. Wasatch Cnty.*, No. 2:10CV01204-DS, 2011 WL 3240510, at *2 (D. Utah July 28, 2011) ("Because she has not established that existing remedies do not redress her injuries, Plaintiff's Third Claim for Relief of the Amended Complaint must be dismissed."); *Mglej v. Garfield Cnty.*, No. 2:13-CV-713, 2014 WL 2967605, at *4 (D. Utah July 1, 2014).

### D. Vincent Blackmore Admits He Has No Claims Against Washington County Defendants

In the Opposition, Vincent Blackmore admits that he does not have any claims against

the Washington County Defendants and should be dismissed as a plaintiff against the

Washington County Defendants only. Therefore, Mr. Blackmore's claims against the

Washington County Defendants are DISMISSED.

## IV. ORDER

IT IS HEREBY ORDERED that the Motion[180] is GRANTED IN PART and DENIED IN

PART as follows:

1.  Blackmore's third claim against Ramirez for an illegal strip search is NOT DISMISSED;

2.  Blackmore's fourth claim against Washington County for a failure to train or supervise is DISMISSED WITH PREJUDICE;

3.  Blackmore's sixth claim for violation of state civil rights is DISMISSED WITH PREJUDICE against the Washington County Defendants; and

4.  All of Vincent Blackmore's claims against the Washington County Defendants are DISMISSED WITH PREJUDICE.

Signed June 3, 2024.

BY THE COURT

David Nuffer
United States District Judge

---

[180] Docket no. 76, filed March 14, 2023.