THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| VINCENT BLACKMORE and DANYALE BLACKMORE,<br><br>Plaintiffs,<br><br>v.<br><br>JARED CALSON, ERIC DEMILLE, LA-NORMA RAMIREZ, WASHINGTON COUNTY, and HURRICANE CITY,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING HURRICANE CITY DEFENDANTS' [86] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:21-cv-00026-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff Danyale Blackmore ("Blackmore") was arrested by Hurricane City Police Officers Jared Carlson ("Carlson") and Eric DeMille ("DeMille") in January 2020 at the My Place Hotel ("Hotel") in Hurricane, Utah. Blackmore's arrest occurred after Carlson and DeMille were called to the Hotel to assist a locked-out guest. Blackmore, an owner of the Hotel, was on call and came down to the lobby to respond to the situation of the locked-out guest. After a brief but abrasive interaction between Blackmore, the guest, Carlson, and DeMille, Blackmore was arrested for disorderly conduct and interference with an arresting officer (the "Incident"). Blackmore and her husband Vincent Blackmore (together "Blackmores") brought this suit against Carlson, DeMille and Hurricane City (together "Hurricane City Defendants") for unlawful arrest and seizure, failure to train, abuse of process, and violation of state civil rights.

The Hurricane City Defendants filed a motion for summary judgment ("Motion")[1] seeking dismissal of the Blackmores' remaining claims against them. The Blackmores filed an opposition[2] and the Hurricane City Defendants filed a reply.[3]

There are several additional filings related to the Motion. The Blackmores filed a Request for Judicial Notice of Jury Verdict and Certain Jury Instructions[4] and a Notice of Supplemental Authority.[5] Hurricane City Defendants filed a Motion for Leave of Court to Supplement Motion for Summary Judgment,[6] to which the Blackmores filed an opposition[7] and Hurricane City Defendants filed a reply. [8] As explained more fully in the orders specifically addressing them,[9] the Request for Judicial Notice and Motion for Leave to File Supplement were both GRANTED. Though these motions were both granted, neither motion impacted the substantive analysis or decision in this order. Blackmore also filed a motion to strike Hurricane City Defendants' answer to the amended complaint,[10] to which there was an opposition and reply filed.[11] This motion was

---

[1] Defendants Jared Carlson, Eric DeMille, and Hurricane City's Motion (1) for Summary Judgment; and, Alternatively, (2) to Stay, docket no. 86, filed April 7, 2023.

[2] Plaintiffs' Memorandum in Opposition to Motion (1) for Summary Judgment; and, alternatively, (2) to stay filed by Defendants Carlson, DeMille, and Hurricane City ("Opposition"), Docket no. 110, filed May 10, 2023.

[3] Reply Memorandum in Support of Defendants Jared Carlson, Eric DeMille, and Hurricane City's Motion (1) for Summary Judgment; and, alternatively, (2) to Stay ("Reply"), Docket no. 132, filed June 15, 2023.

[4] Docket no. 144, filed January 29, 2024.

[5] Docket no. 146, filed February 12, 2024.

[6] Docket no. 147, filed February 28, 2023.

[7] Plaintiffs' Opposition to Motion for Leave of Court to Supplement Motion for Summary Judgment, docket no. 149, filed March 13, 2024.

[8] Reply Memorandum in Support of Motion for Leave of Court to Supplement Motion for Summary Judgment, docket no. 150, filed March 20, 2024.

[9] See Memorandum Decision and Order Granting [147] Motion for Leave to Supplement Motion for Summary Judgment and Granting [144] Request for Judicial Notice of Jury Verdict and Instructions, docket no. 157, filed June 6, 2024.

[10] Plaintiffs' Motion to Strike Defendants Jared Carlson, Eric DeMille and Hurricane City's Answer to Amended Complaint, docket no. 133, filed June 29, 2023.

[11] Memorandum in Opposition to Plaintiffs' Motion to Strike Defendants Jared Carlson, Eric DeMille and Hurricane City's Answer to Amended Complaint, docket no. 134, filed July 7, 2023; Plaintiffs Reply to Memorandum in

GRANTED IN PART and DENIED IN PART as explained in the order ruling on it;[12] this result did not change the analysis in this order.

As explained more fully below, the Motion is GRANTED. Summary judgment dismissing Blackmore's first cause of action for unlawful seizure is appropriate because Carlson and DeMille had probable cause to arrest Blackmore for interfering with a peace officer and because Carlson and DeMille are entitled to qualified immunity on this claim. Additionally, summary judgment dismissing Blackmore's fourth cause of action for failure to train and fifth cause of action for abuse of process is proper because Blackmore has not sufficiently set forth evidence for these claims. Summary judgment dismissing Blackmore's sixth claim for violation of state civil rights is appropriate because Blackmore has not satisfied the requirements set forth in the controlling *Spackman*[13] case.

**Table of Contents**

I. Statement of Undisputed Facts ..................................................................................................... 4
II. Standard Of Review ................................................................................................................... 22
III. Discussion ................................................................................................................................. 23
    A.    Vincent Blackmore Does Not Have Standing for Any Claims Against Hurricane
              City Defendants ............................................................................................................ 24
    B.    Blackmore's Abuse of Process Claim is Dismissed for Lack of Evidence .......... 25
    C.    Blackmore's First Cause of Action for Unlawful Seizure is Dismissed Because
              Carlson and DeMille had Probable Cause for Blackmore's Arrest and Because
              Carlson and DeMille are Entitled to Qualified Immunity ................................... 25
          1.    The Summary Judgment Record Does Not Show Grounds to Arrest
                    Blackmore for Disorderly Conduct............................................................ 27
          2.    The Summary Judgment Record Shows Blackmore Interfered with an
                    Arresting Officer..................................................................................... 35
          3.    Hurricane City Defendants Are Entitled to Summary Judgment on
                    Blackmore's First Cause of Action for Unlawful Seizure Based on
                    Qualified Immunity.................................................................................. 37

---

Opposition to Plaintiffs' Motion to Strike Defendants Jared Carlson, Eric DeMille and Hurricane City's Answer to Amended Complaint, docket no. 136, filed July 28, 2023.

[12] *See* Memorandum Decision and Order Denying in Part and Granting in Part Motion to Strike Answer to Amended Complaint, docket no. 158, filed June 6, 2024.

[13] *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, 16 P.3d 533, 538.

D.      Blackmore's Claim for Failure to Train Fails Because Blackmore Has Not
        Sufficiently Demonstrated a Widespread Practice of Unlawful Arrests ............. 40

E.      Blackmore's State Constitutional Claims are Dismissed Because they are
        Duplicative of Blackmore's Federal Claim and Not Clearly Established ........... 43

        1.      Blackmore Has Not Shown Alleged Violations of Clearly Established
                Rights .................................................................................................. 44

        2.      Existing Remedies Bar Blackmore's State-Based Claim for an Arrest
                Without Probable Cause ...................................................................... 46

IV. Order ............................................................................................................................... 49

## I. STATEMENT OF UNDISPUTED FACTS[14]

1.      In the very early morning of January 6, 2020, Officers Jared Carlson ("Carlson")

and Eric DeMille ("DeMille") of the Hurricane City Police Department responded to a call for a

citizen assist to help a reportedly locked out guest at the My Place Hotel ("Hotel") in Hurricane

City, Utah.[15]

2.      The hotel guest reporting himself locked-out was Brett Brangham

("Brangham").[16]

---

[14] The following Undisputed Facts are taken from both Defendants' Motion and Plaintiffs' Opposition. Facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Material Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, some of these Undisputed Material Facts may not be material to the disposition of the Motion, but are nevertheless included to give background and context to the issues raised in the Motions. The facts have been restated in some instances.

[15] Motion, docket no. 86, filed April 7, 2023, at 3-4, Statement of Undisputed Facts ¶¶ 1, 3; Opposition, docket no. 110, filed May 10, 2023, at 3; Officer Carlson Body Camera Footage ("Carlson Video"), Exhibit A to Motion, at 01:34:19-01:34:42 (for convenience, playtime of the exhibit is noted in parentheses after the timestamps take from the bodycam video) (0:00:37-0:01:01); and Dispatch Audio, Exhibit D to the Motion at 0:00:00-0:04:00 (Carlson Video and Dispatch Audio filed conventionally); and Deposition of Eric DeMille taken March 31, 2022 ("DeMille Depo."), docket no. 86-2, filed April 7, 2023, at 28:1-28:13; 29:7-17.

[16] Motion, docket no. 86, filed April 7, 2023, at 4, Statement of Undisputed Facts ¶ 3; Opposition, docket no. 110, filed May 10, 2023, at 3; Dispatch Audio, Exhibit D to the Motion, at 0:01:58-0:02:08.

3.      When Carlson arrived at the Hotel and exited his patrol vehicle, Brangham was waiting in the parking lot and approached Carlson.[17] Carlson directed Brangham to the front of the Hotel.[18]

4.      Carlson asked Brangham what he wanted Carlson to do; Brangham, describing unsuccessful attempts to get helped back into his room, asked Carlson to check it out.[19]

5.      Carlson, DeMille, and Brangham entered the Hotel through the front entrance and proceeded to the lobby.[20]

6.      To enter the lobby, Carlson, DeMille, and Brangham entered through an exterior automatic sliding door that opened as they approached, and then through a second automatic sliding door, but the sliding panel of the second sliding door was off its regular track, open at an angle, and stationary.[21]

---

[17] Motion, docket no. 86, filed April 7, 2023, at 4, Statement of Undisputed Facts ¶ 8; Opposition, docket no. 110, filed May 10, 2023, at 4-5; Carlson Video, Exhibit A to Motion, at 01:34:34-01:34:38 (0:00:53-0:00:57).

[18] Motion, docket no. 86, filed April 7, 2023, at 4, Statement of Undisputed Facts ¶ 9; Opposition, docket no. 110, filed May 10, 2023, at 4-5; Carlson Video, Exhibit A to Motion, at 01:34:36-01:34:48 (0:00:55-0:01:07).

[19] Motion, docket no. 86, filed April 7, 2023, at 5, Statement of Undisputed Facts ¶ 10; Opposition, docket no. 110, filed May 10, 2023, at 4-5; Carlson Video, Exhibit A to Motion, at 01:34:46-01:35:15 (0:01:05-0:01:33).

[20] Motion, docket no. 86, filed April 7, 2023, at 5, Statement of Undisputed Facts ¶ 10; Opposition, docket no. 110, filed May 10, 2023, at 4-5; Carlson Video, Exhibit A to Motion, at 01:35:15-01:36:12 (0:01:33-0:02:30).

[21] Motion, docket no. 86, filed April 7, 2023, at 5, Statement of Undisputed Facts ¶ 12; Opposition, docket no. 110, filed May 10, 2023, at 5; Reply, Docket no. 132, filed June 15, 2023, at 4-5; Carlson Video, Exhibit A to Motion, at 01:35:57-01:36:12 (0:02:15-0:02:30). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:36:07 (0:02:25).



7.     The layout of the lobby includes a front desk, coffee station, and fridges with snacks for purchase on the right of the lobby and a small business center and common area with tables to the left.[22]

8.     Nobody was in the lobby or at the front desk when Carlson, DeMille, and Brangham entered the lobby.[23]

9.     Only two rooms at the Hotel had guests checked-in on the night of the incident, one of which was Brangham's room.[24]

10.    A sign on the Hotel front desk read: "We are away from the front desk assisting another guest. For immediate assistance, please dial '0' on the phone in the lounge."[25]

---

[22] Motion, docket no. 86, filed April 7, 2023, at 5, Statement of Undisputed Facts ¶ 13; Opposition, docket no. 110, filed May 10, 2023, at 5; Deposition of Danyale Blackmore taken March 30, 2022 ("Blackmore Depo."), docket no. 86-3, filed April 7, 2023, at 73:4-77:11; 80:18–23; Blackmore diagram of lobby, docket no. 86-4, filed April 7, 2023, at 1; Carlson Video, Exhibit A to Motion, at 01:36:07-01:36:12 (0:02:26-0:02:31).

[23] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶ 16; Opposition, docket no. 110, filed May 10, 2023 at 5-6; Carlson Video, Exhibit A to Motion, at 01:36:06-01:36:18 (0:02:24-0:02:37).

[24] Blackmore Depo., docket no. 86-3, filed April 7, 2023, at 205:11-206:13.

[25] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶ 17; Opposition, docket no. 110, filed May 10, 2023, at 5-6; Carlson Video, Exhibit A to Motion, at 01:36:14 (0:02:33).

11.     Carlson picked up the lobby phone and was connected with Blackmore.[26] Carlson

requested Blackmore come to the front desk.[27] Blackmore's response was not heard or recorded

by Carlson's bodycam.[28]

12. Carlson then confirmed he was speaking with a representative of the Hotel and again

requested Blackmore come to the front desk.[29] Carlson identified himself as the Hurricane Police

Department.[30] Blackmore's response was not heard or recorded by Carlson's bodycam.[31]

13.     Carlson explained to Blackmore that there was "a resident guest here who's

locked out of his room," and asked if Blackmore could please "just come here and help him."[32]

Blackmore's response was not heard or recorded by Carlson's bodycam.[33]

14.     Carlson asked Blackmore again: "Yes, can you please come to the front desk?"[34]

Blackmore's response was not heard or recorded by Carlson's bodycam.[35]

---

[26] Blackmore Depo., docket no. 86-3, filed April 7, 2023, at 98:24-100:13.

[27] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶¶ 18-19; Opposition, docket no. 110, filed May 10, 2023, at 5-6; Carlson Video, Exhibit A to Motion, at 01:36:20-1:36:56 (0:02:39-0:03:14).

[28] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶ 20; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:36:55-1:36:57 (0:03:13-0:03:16).

[29] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶ 21; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:36:57-1:37:05 (0:03:15-0:03:23).

[30] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶ 21; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:36:57-1:37:05 (0:03:15-0:03:23).

[31] Motion, docket no. 86, filed April 7, 2023, at 6, Statement of Undisputed Facts ¶ 22; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:36:55-1:36:57 (0:03:13-0:03:16).

[32] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 23; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:05-1:37:09 (0:03:24-0:03:28).

[33] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 24; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:09-1:37:20 (0:03:27-0:03:38).

[34] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 25; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:18-1:37:22 (0:03:37-0:03:40).

[35] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 24; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:22-1:37:28 (0:03:40-0:03:46).

15.     Carlson then told Blackmore that she should "call the Hurricane Police Department, the dispatch center, if you, like seriously, there's a guy here that's locked out of his room. Um, are you at the hotel?"[36] Blackmore's response was not heard or recorded by Carlson's bodycam.[37]

16.     Carlson then directed Blackmore to "look at the north . . . look at the north parking lot. There's two police cars in the parking lot."[38] Blackmore's response was not heard or recorded by Carlson's bodycam.[39]

17.     Carlson then explained to Blackmore that "he called us—he didn't see the sign over there."[40] Blackmore's response was not heard or recorded by Carlson's bodycam.[41]

18.     Carlson then asked Blackmore: "ma'am, can you just, can you just dial 911, then?"[42]

19.     Blackmore did not call 911.[43] Blackmore later explained that she didn't see the need to call 911.[44]

---

[36] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 27; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:28-1:37:39 (0:03:46-0:03:58).

[37] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 28; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:38-1:37:41 (0:03:56-0:04:00).

[38] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 29; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:41-1:37:44 (0:03:59-0:04:03).

[39] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 30; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:44-1:37:51 (0:04:03-0:04:10).

[40] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 31; Opposition, docket no. 110, filed May 10, 2023, at 6;  Carlson Video, Exhibit A to Motion, at 01:37:51-1:37:55 (0:04:10-0:04:14).

[41] Motion, docket no. 86, filed April 7, 2023, at 7, Statement of Undisputed Facts ¶ 32; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:37:54-1:38:00 (0:04:13-0:04:19).

[42] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 33; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:00-1:38:05 (0:04:19-0:04:23).

[43] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 35; Opposition, docket no. 110, filed May 10, 2023, at 6; Blackmore Depo, docket no. 86-3, filed April 7, 2023, at 101:9-12.

[44] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 35; Opposition, docket no. 110, filed May 10, 2023, at 6; Blackmore Depo, docket no. 86-3, filed April 7, 2023, at 120:7-8.

20.     Carlson continued: "yeah, I'm calling from the lobby. I'm looking at the sign right there on the lobby."[45] Blackmore's response was not heard or recorded by Carlson's bodycam, but she later explained that she asked Carlson how he got into the hotel lobby. [46]

21.     Carlson responded: "because the door's open."[47] Blackmore's response was not heard or recorded by Carlson's bodycam.[48] Carlson reiterated, "it's open ma'am, and I don't appreciate you swearing at me."[49] Blackmore's response was not heard or recorded by Carlson's bodycam.[50]

22.     Carlson then asked Blackmore, "then how am I ca—then how am I calling you?"[51] Blackmore's response was not heard or recorded by Carlson's bodycam.[52]

23.     Carlson continued explaining to Blackmore: "In the north parking lot there's two police cars, I promise you."[53] Blackmore's response was not heard or recorded by Carlson's bodycam.[54]

---

[45] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 34; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:16-1:38:19 (0:04:33-0:04:37).

[46] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 36; Carlson Video, Exhibit A to Motion, at 01:38:19-1:38:21 (0:04:37-0:04:39); Opposition, docket no. 110, filed May 10, 2023, at 6; Blackmore Depo, docket no. 86-3, filed April 7, 2023, at 100:2-3.

[47] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 37; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:20-1:38:23 (0:04:39-0:04:41).

[48] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 38; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:23-1:38:00 (0:04:41-0:04:19).

[49] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 39; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:25-1:38:29 (0:04:43-0:04:47).

[50] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 40; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:29-1:38:32 (0:04:47-0:04:49).

[51] Motion, docket no. 86, filed April 7, 2023, at 8, Statement of Undisputed Facts ¶ 41; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:32-1:38:34 (0:04:49-0:04:53).

[52] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 42; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:34-1:38:32 (0:04:53-0:04:49).

[53] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 45; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:44-1:38:47 (0:05:02-0:05:05).

[54] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 46; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:47-1:38:57 (0:05:05-0:05:16).

24.     Carlson repeated: "there's a guest that's locked out of a room."[55] Blackmore's response was not heard or recorded by Carlson's bodycam.[56] Carlson then asked Blackmore, "you own the hotel?"[57] Blackmore's response was not heard or recorded by Carlson's bodycam.[58]

25.     Carlson again petitioned Blackmore, "Okay, if you could come down please, we'd appreciate it."[59] Blackmore's response was not heard or recorded by Carlson's bodycam.[60]

26.     Carlson then said, "I don't know, Ma'am. But I'd really like to leave, so if you could come down here?"[61] Blackmore's response was not heard or recorded by Carlson's bodycam.[62] Carlson then asked Brangham: "what room are you in, sir?"[63] Carlson then relayed to Blackmore that Brangham was in room 111.[64] Blackmore's response was not heard or recorded by Carlson's bodycam.[65]

---

[55] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 47; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:57-1:38:59 (0:05:16-0:05:18).

[56] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 48; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:38:59-1:39:12 (0:05:18-0:05:31).

[57] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 49; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:11-1:39:14 (0:05:30-0:05:33).

[58] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 50; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:14-1:39:17 (0:05:33-0:05:36).

[59] Motion, docket no. 86, filed April 7, 2023, at 9, Statement of Undisputed Facts ¶ 51; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:17-1:39:20 (0:05:36-0:05:39).

[60] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 52; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:20-1:39:22 (0:05:39-0:05:41).

[61] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 53; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:22-1:39:27 (0:05:41-0:05:46).

[62] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 54; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:27-1:39:28 (0:05:46-0:05:47).

[63] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 55; Opposition, docket no. 110, filed May 10, 2023, at 6; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:28-1:39:30 (0:05:47-0:05:49).

[64] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 56; Opposition, docket no. 110, filed May 10, 2023, at 6; Carlson Video, Exhibit A to Motion, at 01:39:33-1:39:38 (0:05:51-0:05:56).

[65] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 57; Opposition, docket no. 110, filed May 10, 2023, at 6;  Carlson Video, Exhibit A to Motion, at 01:39:38-1:39:42 (0:05:56-0:06:00).

27.     Carlson hung up the phone, and told DeMille that Blackmore was "cussing me out—saying its full of crap, she's not going to come down, she's not going to call the police department."[66]

28.     Carlson suggested Brangham try calling to talk to Blackmore.[67]

29.     Brangham called Blackmore from the lobby phone, explained he did not have a key, was locked out, and had kicked the lobby door open to get into the lobby.[68]

30.     Carlson moved toward the back of the lobby where the lobby meets a back hallway and soon after saw Blackmore walking down the hallway toward the lobby with a phone in hand.[69]



---

[66] Motion, docket no. 86, filed April 7, 2023, at 10, Statement of Undisputed Facts ¶ 58; Opposition, docket no. 110, filed May 10, 2023, at 6-7; Carlson Video, Exhibit A to Motion, at 01:39:42-1:39:52 (0:06:00-0:06:10).

[67] Motion, docket no. 86, filed April 7, 2023, at 11, Statement of Undisputed Facts ¶ 62; Opposition, docket no. 110, filed May 10, 2023, at 7; Carlson Video, Exhibit A to Motion, at 01:40:49-1:39:57 (0:07:08-0:07:16).

[68] Motion, docket no. 86, filed April 7, 2023, at 11, Statement of Undisputed Facts ¶ 64; Opposition, docket no. 110, filed May 10, 2023, at 7; Carlson Video, Exhibit A to Motion, at 01:40:56-1:41:39 (0:07:16-0:07:57).

[69] Motion, docket no. 86, filed April 7, 2023, at 11, Statement of Undisputed Facts ¶ 65; Opposition, docket no. 110, filed May 10, 2023, at 7; Carlson Video, Exhibit A to Motion, at 01:41:39-1:42:07 (0:07:58-0:08:26). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:01 (0:08:19).

31.     DeMille positioned himself a couple of feet to the right of Carlson.[70]

32.     As Blackmore walked down the hall, but before reaching the lobby, she looked towards Carlson and said, "I want him gone. Right now."[71]

33.     Blackmore later admitted that as she entered the lobby, "it was very obvious that I was upset."[72]

34.     With her arm outstretched towards Brangham, Blackmore said, "I want him out. Go away. Get your shit."[73] Blackmore did not have a weapon and did not physically touch Brangham, or make any aggressive movements towards Brangham.[74]

---

[70] Officer DeMille Body Camera Footage ("DeMille Video"), Exhibit B to Motion, at 01:41:57 (0:05:37) (DeMille Video filed conventionally).

[71] Motion, docket no. 86, filed April 7, 2023, at 12, Statement of Undisputed Facts ¶ 66; Opposition, docket no. 110, filed May 10, 2023, at 7; Carlson Video, Exhibit A to Motion, at 01:41:59-1:42:06 (0:08:18-0:08:24).

[72] Motion, docket no. 86, filed April 7, 2023, at 12, Statement of Undisputed Facts ¶ 68; Opposition, docket no. 110, filed May 10, 2023, at 8; Blackmore Depo, docket no. 86-3, filed April 7, 2023, at 180:9-10.

[73] Motion, docket no. 86, filed April 7, 2023, at 12, Statement of Undisputed Facts ¶ 72; Opposition, docket no. 110, filed May 10, 2023, at 8-9; Carlson Video, Exhibit A to Motion, at 01:42:10-1:42:18 (0:08:29-0:08:37). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:17 (0:08:36).

[74] Carlson Video, Exhibit A to Motion, at 01:42:10-1:42:30 (0:08:29-0:08:49). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:17 (0:08:36).



35. Carlson interjected and told Blackmore to "hold on, hold on, hold on," to which Blackmore said, "no."[75]

36.    Blackmore again told Brangham to "get your shit."[76] As Blackmore was talking and looking toward Brangham, Carlson repeated again, "hold on."[77]

37.    Carlson then said, "ma'am, let's go talk over there," while pointing down the hallway where Blackmore had come from.[78]

---

[75] Motion, docket no. 86, filed April 7, 2023, at 13, Statement of Undisputed Facts ¶ 73; Opposition, docket no. 110, filed May 10, 2023, at 9; Carlson Video, Exhibit A to Motion, at 01:42:16-1:42:19 (0:08:35-0:08:38).

[76] Motion, docket no. 86, filed April 7, 2023, at 13, Statement of Undisputed Facts ¶ 74; Opposition, docket no. 110, filed May 10, 2023, at 9-10; Carlson Video, Exhibit A to Motion, at 01:42:19-1:42:20 (0:08:37-0:08:39).

[77] Motion, docket no. 86, filed April 7, 2023, at 13, Statement of Undisputed Facts ¶ 75; Opposition, docket no. 110, filed May 10, 2023, at 10; Carlson Video, Exhibit A to Motion, at 01:42:19-1:42:20 (0:08:37-0:08:39).

[78] Motion, docket no. 86, filed April 7, 2023, at 13, Statement of Undisputed Facts ¶ 76; Opposition, docket no. 110, filed May 10, 2023, at 10-11; Carlson Video, Exhibit A to Motion, at 01:42:18-1:42:23 (0:08:37-0:08:42). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:23 (0:08:42).



38.     Blackmore turned and started briefly moving down the hallway before stopping and continuing to explain her view of the events to Carlson; Carlson said, "stop."[79]

39.     As Brangham tried to interject, Carlson told Brangham to "shut up and go over there," while pointing toward the front of the lobby.[80] At the same time, DeMille directed Brangham away from Blackmore and Carlson; Brangham complied.[81]

[79] Motion, docket no. 86, filed April 7, 2023, at 14, Statement of Undisputed Facts ¶ 77; Opposition, docket no. 110, filed May 10, 2023, at 10-11; Carlson Video, Exhibit A to Motion, at 01:42:23-1:42:26 (0:08:42-0:08:44).

[80] Motion, docket no. 86, filed April 7, 2023, at 14, Statement of Undisputed Facts ¶ 78; Opposition, docket no. 110, filed May 10, 2023, at 10-11; Carlson Video, Exhibit A to Motion, at 01:42:26-1:42:28 (0:08:44-0:08:47).

[81] Motion, docket no. 86, filed April 7, 2023, at 14, Statement of Undisputed Facts ¶¶ 79-80; Opposition, docket no. 110, filed May 10, 2023, at 10-11; DeMille Video, Exhibit B to Motion, at 01:42:17-01:42:21 (0:05:58-0:06:02).

40.    Carlson then repeated his direction to Blackmore: "let's go over there," while pointing down the hallway.[82] Blackmore told Carlson to "get rid of him," and moved down the hallway.[83]



41.    Blackmore walked a few steps down the hallway, then turned around, and said, while pointing further down the hallway, "no, he opened that door. That door was open with a plan—open. If he can get in there, then he can get in his room. And he kicked my front door open, that was locked."[84]

---

[82] Motion, docket no. 86, filed April 7, 2023, at 14, Statement of Undisputed Facts ¶ 81; Opposition, docket no. 110, filed May 10, 2023, at 10-11; Carlson Video, Exhibit A to Motion, at 01:42:27-1:42:29 (0:08:46-0:08:48).

[83] Motion, docket no. 86, filed April 7, 2023, at 14, Statement of Undisputed Facts ¶ 81; Opposition, docket no. 110, filed May 10, 2023, at 10-11; Carlson Video, Exhibit A to Motion, at 01:42:27-1:42:29 (0:08:46-0:08:48). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:30 (0:08:49).

[84] Motion, docket no. 86, filed April 7, 2023, at 15, Statement of Undisputed Facts ¶ 82; Opposition, docket no. 110, filed May 10, 2023, at 11; Carlson Video, Exhibit A to Motion, at 01:42:29-1:42:42 (0:08:47-0:09:00). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:35 (0:08:53).



42.     Blackmore then immediately said, "I have procedures," and started to walk back towards the lobby and past Carlson.[85]

43.     Carlson reached out his arm to block Blackmore and said, "hold on, hold on."[86]

---

[85] Motion, docket no. 86, filed April 7, 2023, at 15, Statement of Undisputed Facts ¶ 83; Opposition, docket no. 110, filed May 10, 2023, at 11-12; Carlson Video, Exhibit A to Motion, at 01:42:41-1:42:44 (0:08:59-0:09:02).

[86] Motion, docket no. 86, filed April 7, 2023, at 15, Statement of Undisputed Facts ¶ 84; Opposition, docket no. 110, filed May 10, 2023, at 12; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:44 (0:09:01-0:09:02). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:43 (0:09:01).



44.     As Blackmore continued walking back towards the lobby, Blackmore and Carlson came into physical contact.[87]

45. Carlson then pushed Blackmore backwards with his left arm from the hallway into an alcove adjacent to the hallway.[88] Carlson told Blackmore to "Stop."[89]

---

[87] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 88; Opposition, docket no. 110, filed May 10, 2023, at 13; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:44 (0:09:01-0:09:02).

[88] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 91; Opposition, docket no. 110, filed May 10, 2023, at 14; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:47 (0:09:01-0:09:05).

[89] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 91; Opposition, docket no. 110, filed May 10, 2023, at 14; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:46 (0:09:01-0:09:04). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:44 (0:09:03).



46.     Blackmore then said to Carlson: "Can you not touch me?"[90] Carlson responded to Blackmore to "Just stop."[91] Blackmore then shouted, "Don't fucking touch me!"[92] As she said this, Blackmore moved away from Carlson backwards and to her right in the alcove; Carlson followed, closing the distance to Blackmore.[93] Carlson repeated to Blackmore to "Stop."[94] As Blackmore again shouted "don't touch me," and moved away from Carlson back to her left, Carlson grabbed her right shoulder and pushed her against a wall.[95]

---

[90] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 92; Opposition, docket no. 110, filed May 10, 2023, at 14-15; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:47 (0:09:01-0:09:05).

[91] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 92; Opposition, docket no. 110, filed May 10, 2023, at 14-15; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:48 (0:09:01-0:09:06).

[92] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 93; Opposition, docket no. 110, filed May 10, 2023, at 15; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:48 (0:09:01-0:09:06).

[93] Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:48 (0:09:01-0:09:06).

[94] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 93; Opposition, docket no. 110, filed May 10, 2023, at 15; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:48 (0:09:01-0:09:06).

[95] Motion, docket no. 86, filed April 7, 2023, at 16, Statement of Undisputed Facts ¶ 93; Opposition, docket no. 110, filed May 10, 2023, at 15; Carlson Video, Exhibit A to Motion, at 01:42:43-1:42:50 (0:09:01-0:09:09). Screenshot taken from Carlson Video, Exhibit A to Motion, at 01:42:49 (0:09:07).



47. From the time Carlson pushed Blackmore backwards into the alcove to the time Carlson grabbed Blackmore's right shoulder, Carlson made several movements to reduce the distance between himself and Blackmore by moving further towards Blackmore.[96]

48. Carlson, without explanation, grabbed Blackmore's right hand with his right hand, and turned her into the wall, with Blackmore's chest touching the wall.[97] Carlson then pulled Blackmore's right arm behind her back with his right hand while pressing Blackmore into the wall with his left forearm.[98] DeMille began to assist Carlson in moving Blackmore's hands behind her back.[99]

---

[96] DeMille Video, Exhibit B to Motion, at 01:42:35-01:42:43 (0:06:16-0:06:23).

[97] DeMille Video, Exhibit B to Motion, at 01:42:35-01:42:43 (0:06:16-0:06:23).

[98] DeMille Video, Exhibit B to Motion, at 01:42:35-01:42:43 (0:06:16-0:06:24).

[99] DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:43 (0:06:22-0:06:24). Screenshot taken from DeMille Video, Exhibit B to Motion, at 01:42:43 (0:06:23).



49.    Blackmore began to scream and struggle while Carlson tried to get her arms behind her and Carlson told Blackmore to put her hands behind her back.[100] Blackmore shouted, "no, no, no," and struggled to keep her arms in front of her.[101] Carlson repeated: "Put your hands behind your back now."[102] Blackmore again shouted, "no!"[103] As Carlson and DeMille moved Blackmore's hands behind her back, she repeatedly shouted "no," "stop," and then "don't touch me."[104] Blackmore later explained that she was moving her hands and trying to turn to talk to

---

[100] Motion, docket no. 86, filed April 7, 2023, at 18, Statement of Undisputed Facts ¶¶ 97-98; Opposition, docket no. 110, filed May 10, 2023, at 16; DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:52 (0:06:22-0:06:32).

[101] Motion, docket no. 86, filed April 7, 2023, at 18, Statement of Undisputed Facts ¶¶ 97-98; Opposition, docket no. 110, filed May 10, 2023, at 16; DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:52 (0:06:22-0:06:32), Carlson Video, Exhibit A to Motion, at 01:42:50-1:43:03 (0:09:09-0:09:22).

[102] Motion, docket no. 86, filed April 7, 2023, at 18, Statement of Undisputed Facts ¶¶ 97-98; Opposition, docket no. 110, filed May 10, 2023, at 16; DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:52 (0:06:22-0:06:32).

[103] Motion, docket no. 86, filed April 7, 2023, at 18, Statement of Undisputed Facts ¶¶ 97-98; Opposition, docket no. 110, filed May 10, 2023, at 16; DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:52 (0:06:22-0:06:32).

[104] Motion, docket no. 86, filed April 7, 2023, at 18, Statement of Undisputed Facts ¶ 99; Opposition, docket no. 110, filed May 10, 2023, at 16; DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:52 (0:06:22-0:06:32).

Carlson and DeMille because she did not understand what was happening and did not believe they had a reason to be touching her.[105]

50.     Carlson then told Blackmore she was under arrest.[106] Blackmore responded, "Why? For what? Why am I under arrest? Why am I under arrest? Stop it!"[107] Blackmore also said, "You guys are assholes. I hate cops. Why am I under arrest? I didn't do anything wrong. This is my hotel. Stop it. Stop it, please. I am asking you please to stop. This is my hotel."[108]

51.     Carlson then said, "I am telling you to stop right now," to which Blackmore responded, "okay."[109] Then Carlson continued, "I told you to stop. I told you not to approach him. I stopped you from going up to him because I was concerned that you were going to confront him."[110] Blackmore asked Carlson to stop.[111] Carlson said, "No."[112]

52. Carlson took Blackmore to his police vehicle, and she was transported to the Washington County Purgatory Correctional Facility.[113]

53.     The Blackmores do not have any knowledge of any direction given to Carlson and DeMille by Hurricane City or the Police Department to look for opportunities to cause trouble

---

[105] Motion, docket no. 86, filed April 7, 2023, at 18, Statement of Undisputed Facts ¶¶ 100, 102; Opposition, docket no. 110, filed May 10, 2023, at 17; Blackmore Depo, docket no. 86-3, filed April 7, 2023, at 156:9-158:21.

[106] Motion, docket no. 86, filed April 7, 2023, at 19, Statement of Undisputed Facts ¶ 106; Opposition, docket no. 110, filed May 10, 2023, at 19; DeMille Video, Exhibit B to Motion, at 01:42:42-01:42:55 (0:06:22-0:06:35).

[107] DeMille Video, Exhibit B to Motion, at 01:42:52-01:42:59 (0:06:32-0:06:39).

[108] Motion, docket no. 86, filed April 7, 2023, at 19, Statement of Undisputed Facts ¶ 107; Opposition, docket no. 110, filed May 10, 2023, at 19; DeMille Video, Exhibit B to Motion, at 01:42:59-01:43:13 (0:06:39-0:06:53).

[109] Motion, docket no. 86, filed April 7, 2023, at 19-20, Statement of Undisputed Facts ¶¶ 108-109; Opposition, docket no. 110, filed May 10, 2023, at 19; DeMille Video, Exhibit B to Motion, at 01:43:12-01:43:15 (0:06:52-0:06:55).

[110] Motion, docket no. 86, filed April 7, 2023, at 20, Statement of Undisputed Facts ¶ 110; Opposition, docket no. 110, filed May 10, 2023, at 19-20; DeMille Video, Exhibit B to Motion, at 01:43:14-01:43:25 (0:06:54-0:07:05).

[111] DeMille Video, Exhibit B to Motion, at 01:43:23-01:43:26 (0:07:03-0:07:07).

[112] DeMille Video, Exhibit B to Motion, at 01:43:23-01:43:26 (0:07:03-0:07:07).

[113] Motion, docket no. 86, filed April 7, 2023, at 22, 25 Statement of Undisputed Facts ¶¶ 121, 141; Opposition, docket no. 110, filed May 10, 2023, at 23, 26.

for the Blackmores.[114] Carlson and DeMille had no knowledge of litigation between the Blackmores and Hurricane City, were never instructed to arrest Blackmore for suing Hurricane City, and the only knowledge they had about the Hotel prior to Blackmore's arrest was an awareness of reports of drug activity at the Hotel.[115]

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[116] A disputed issue of fact is "genuine" when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[117] or in favor of the nonmoving party.[118] Facts are material if they might "affect the outcome of the suit under the governing law."[119] If "a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion."[120] In evaluating a summary judgment motion, the factual record and reasonable inferences drawn are viewed in a light most favorable to the nonmovant.[121]

---

[114] Motion, docket no. 86, filed April 7, 2023, at 29, Statement of Undisputed Facts ¶ 160; Opposition, docket no. 110, filed May 10, 2023, at 28-29; Deposition of Vincent Blackmore ("V. Blackmore Depo."), taken April 1, 2022, docket no. 86-1, at 37:18–38:10; 39:15–18; 41:10–16.

[115] Motion, docket no. 86, filed April 7, 2023, at 29, Statement of Undisputed Facts ¶¶ 161-163; Opposition, docket no. 110, filed May 10, 2023, at 28-29; Deposition of Jared Carlson ("Carlson Depo."), taken December 19, 2022, docket no. 86-5, at 39:4–17; 42:17–25; 36:22–37:10; 38:24–39:17; Deposition of Eric DeMille ("DeMille Depo."), taken March 31, 2022, docket no. 86-2, at 17:1–20; 19:4–20:6; 226:15–21; 31:4–32:1; 41:20–42:1; 61:15–62:2; 20:6–13; 26:9–27:2.

[116] Fed. R. Civ. P. 56.

[117] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[118] *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[119] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[120] *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

[121] *Adler*, 144 F.3d at 670.

A party seeking summary judgment bears the "initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[122] If the moving party meets their initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[123] Speculation and conjecture are not enough—"the party opposing the motion for summary . . . must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."[124] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment.[125]

### III. DISCUSSION

Blackmore and her husband[126] have four remaining claims[127] against Carlson, DeMille, and Hurricane City: (1) Blackmore's first cause of action for unlawful search and seizure in violation of the Fourth Amendment against Carlson and Demille under 42 U.S.C. § 1983;[128] (2) Blackmore's fourth cause of action for failure to train or supervise against "Hurricane City through its Police Department . . . Relating to Defective Policies, Customs or Practices" under 42

---

[122] *Id*. at 670-71.

[123] *Adler*, 144 F.3d at 671 (cleaned up).

[124] *Universal Money Centers, Inc.*, 22 F.3d at 1529 (cleaned up).

[125] *Anderson*, 477 U.S. at 252.

[126] As explained *infra* in section III(A), Plaintiffs impliedly admit that Vincent Blackmore has no apparent standing for any of the claims at issue in this case, and all his claims against the Hurricane City Defendants are dismissed. Therefore, all references to "Blackmore" are to Danyale Blackmore only.

[127] Blackmore's second cause of action for excessive force was dismissed by the Memorandum Decision and Order Denying in Part and Granting in Part the Hurricane Defendants' [19] Motion to Dismiss, docket no. 36, filed December 1, 2021.

[128] Amended Complaint, docket no. 122, filed May 25, 2023 (filed effective February 14, 2022), ¶¶ 125-139.

U.S.C. § 1983;[129] (3) Blackmore's fifth cause of action for abuse of process under 42 U.S.C.

§ 1983;[130] and (4) Blackmore's sixth cause of action against Carlson and DeMille for violation

of state civil rights.[131]

Based on the briefing and summary judgment record, all of the Blackmores claims are

appropriately dismissed on summary judgment as follows: (A) Vincent Blackmore, Blackmore's

husband, does not have standing for any remaining claims and all of his claims are DISMISSED;

(B) Blackmore's claim for abuse of process is DIMISSED because Blackmore has insufficiently

supported her claim with relevant evidence; (C) Blackmore's claim for unlawful seizure is

DISMISSED because Carlson and DeMille had probable cause that Blackmore interfered with an

arresting officer and because Carlson and DeMille are entitled to qualified immunity; (D)

Blackmore's claim for failure to train or supervise is DISMISSED because Blackmore has not

provided sufficient evidence of a widespread practice or defective policy that caused her injuries;

and (E) Blackmore's state law claim is also DISMISSED because Blackmore cannot satisfy the

requirements of *Spackman* to bring a state constitutional claim.

## A.  Vincent Blackmore Does Not Have Standing for Any Claims Against Hurricane City Defendants

Based on the allegations in the Amended Complaint, Vincent Blackmore has no part in

the allegations and alleges no injury for any claims that would provide him standing in this

matter beyond the allegations of the claim for abuse of process.[132] However, the Blackmores

have presented nothing in their briefing on that claim and impliedly abandoned it (see Section

III. B). Nor do the Blackmores attempt to argue that Vincent Blackmore otherwise has standing.

---

[129] docket no. 122, filed May 25, 2023 (filed effective February 14, 2022), ¶¶ 175-191.

[130] *Id*. ¶¶ 192-204.

[131] *Id*. ¶¶ 205-215.

[132] *Id*. ¶¶ 192-204.

A plaintiff must have standing to pursue legal claims against another party. A plaintiff must show that "the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress."[133] A plaintiff must assert their own legal rights and interests and not those of a third party.[134] Accordingly, all claims of Vincent Blackmore against Hurricane City Defendants are DISMISSED.

## B.  Blackmore's Abuse of Process Claim is Dismissed for Lack of Evidence

Hurricane City Defendants assert that the Blackmore has no evidence that would support Blackmore's fifth claim for abuse of process.[135] Blackmore does not challenge this or set forth any evidence or argument on this claim in the Opposition.[136] Accordingly, Blackmore's fifth claim for abuse of process is dismissed.

## C.  Blackmore's First Cause of Action for Unlawful Seizure is Dismissed Because Carlson and DeMille had Probable Cause for Blackmore's Arrest and Because Carlson and DeMille are Entitled to Qualified Immunity

The Fourth Amendment to the United States Constitution protects the right of people to be "secure in their persons . . . against unreasonable . . . seizures[.]"[137] Arrests are a variety of seizure.[138] The Fourth Amendment requires arrests to be "reasonable under the circumstances."[139] Fourth Amendment analysis looks to "whether the arrest is objectively justified, rather than to the motive of the arresting officer."[140] Warrantless arrests are reasonable

---

[133] *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (internal quotation marks and citation omitted).

[134] *Id.*

[135] Motion at 41.

[136] *See generally* Opposition.

[137] U.S. CONST. amend. IV.

[138] *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008).

[139] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735–36 (2011) (citations omitted).

[140] *Id.* at 740.

under the Fourth Amendment if "there is probable cause to believe that a criminal offense has been or is being committed."[141] "To determine whether an officer had probable cause for an arrest, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."[142] "Probable cause is based on the totality of the circumstances[.]"[143]

Similarly, an investigative detention must be supported by reasonable suspicion to be lawful under the Fourth Amendment.[144] Law enforcement officers are permitted to detain a person "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."[145] Reasonable suspicion and probable cause determinations are "highly fact-specific."[146] At the summary judgment stage, the factual record and reasonable inferences drawn therefrom are viewed in a light most favorable to the nonmovant.[147]

Hurricane City Defendants argue Blackmore was validly arrested on two charges: disorderly conduct and interference with a peace officer. On the summary judgment record, Carlson and DeMille did not have reasonable suspicion or probable cause to arrest or detain Blackmore for disorderly conduct. However, the undisputed factual record does show Blackmore was interfering with Carlson and DeMille's attempt to detain and arrest her. Additionally,

---

[141] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted).

[142] *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks and citations omitted).

[143] *Id*.

[144] *Cortez v. McCauley* , 478 F.3d 1108,  1123 (10th Cir. 2007) (citation omitted).

[145] *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citation omitted).

[146] *Donahue v. Wihongi*, 948 F.3d 1177, 1189 n.17 (10th Cir. 2020).

[147] *Adler*, 144 F.3d at 670.

Carlson and DeMille are entitled to qualified immunity for Blackmore's claim of unlawful arrest based on disorderly conduct.

1. The Summary Judgment Record Does Not Show Grounds to Arrest Blackmore for Disorderly Conduct

Utah statutory authority defines three circumstances that constitute disorderly conduct: (1) when an "individual refuses to comply with the lawful order of a law enforcement officer to move from a public place"; (2) when an individual "knowingly creates a hazardous or physically offensive condition, by any act that serves no legitimate purpose,"; or (3) when an individual recklessly creates a "risk of public inconvenience, annoyance, or alarm" by engaging in "fighting or in violent, tumultuous, or threatening behavior."[148] Hurricane City Defendants argue that Blackmore's actions during the Incident created reasonable suspicion and probable cause that Blackmore was committing disorderly conduct under all three theories.[149] However, on this record it is not possible to conclude that Blackmore was engaged in disorderly conduct.

i. Blackmore Did Not Refuse to Comply with the Lawful Order of a Law Enforcement Officer to Move from a Public Place.

Hurricane City Defendants assert that Carlson displayed disorderly conduct sufficient to create probable cause for an arrest when she "refused to comply with the lawful order of a law enforcement officer to move from a public place."[150] As evidence, Hurricane City Defendants argue that Carlson "ordered [Blackmore] to leave the lobby and go into the hallway," that Blackmore refused, and then after Blackmore moved down the hall, that she attempted to charge back into the lobby "from which she had just been ordered to move."[151] This justification for

---

[148] Utah Code Ann. § 76-9-102.

[149] Motion at 31-37.

[150] *Id.* at 31.

[151] *Id.* at 33.

Blackmore's arrest fails because the lobby of a locked hotel is not a public place; because Carlson's direction was not a lawful order; and because material factual disputes remain.

First, at the time of the incident, the Hotel Lobby was not a public place. The disorderly conduct statute defines "public place" as "a place to which the public or a substantial group of the public has access," which includes "streets or highways;" as well as "the common areas of schools, hospitals, apartment houses, office buildings, public buildings, public facilities, transport facilities, and shops."[152] The statutory definition does not specifically include hotel lobbies.[153] The parties dispute whether the Incident occurred in a public place, but do not provide any case law on this issue.[154]

While a hotel lobby may be a public space in some circumstances, the Hotel's lobby here was not a public place. The lobby had been locked and was accessible only by key card—the entire underlying situation leading to the Incident was Brangham's lack of access to the Hotel and his room.[155] No member of the public was present that was not involved directly in the Incident and the hotel had only one occupied room outside Brangham's.[156] It was also the middle of the night, and access was only accomplished after Brangham kicked the locked front-door open.[157] A "substantial group of the public" did not readily have access to the Hotel Lobby.

Brangham's breaking of the Hotel's front door and propping of the side door did not transform the locked Hotel Lobby into a public space. Black's law dictionary defines "access" as

---

[152] Utah Code Ann. § 76-9-102(1)(b).

[153] *Id*.

[154] Motion at 31-32, Opposition at 38-39; Reply at 7–8.

[155] *Supra* Section I, Statement of Undisputed Facts ¶¶ 1, 12-14, 29.

[156] *Id.* ¶ 9.

[157] *Id.* ¶ 29.

a "right, opportunity, or ability to enter, approach, pass to and from, or communicate with."[158] The most natural and logical reading of "access" in this statute necessarily includes that the access be a *rightful* ability to enter. To find otherwise would distort the statute to convert private spaces into public spaces where parties gain access to private spaces through wrongful conduct. The purpose of disorderly conduct laws is to create and keep public order; risks associated with disorderly conduct dissipate in private, closed, or confined spaces. A finding that a locked hotel lobby was turned into a public space through a kicked open door is inconsistent with the general purpose of disorderly conduct statutes. Accordingly, the Lobby was not a public place at the time of the Incident.

Second, Carlson's request was not a lawful order. Police officers do not have absolute authority to order citizens to adjust behavior on a whim or without justification.[159] Carlson was not investigating a crime, was on private property, and Carlson had only requested Blackmore's presence to assist with a locked-out hotel guest as a courtesy.[160] Law enforcement officers must have reasonable suspicion of a crime to detain a person, even if only briefly. [161] Without reasonable suspicion, Carlson had no justification to direct and confine Blackmore down the

---

[158] Black's Law Dictionary (11th ed. 2019).

[159] *Cf. Am. Fork City v. Pena-Flores*, 2002 UT 131, ¶ 31, 63 P.3d 675, 683 (Durrant, J., dissenting) ("The plain language of the terms, 'lawful order,' could be interpreted in two different ways. 'Lawful order' could be interpreted to mean (1) any request an officer is legally permitted to make, regardless of whether the arrested person has a constitutional right to refuse to comply with the request, or (2) only those demands an officer is legally permitted to make that a person does not have a constitutional right to refuse. When the plain language of a statute permits two different interpretations, only one of which would render the statute constitutional, we choose the interpretation that favors constitutionality. Here, only the second interpretation maintains the arrested person's constitutional rights."); *State v. Kreis*, 451 P.3d 954, 963 (Or. 2019) (Looking at Oregon's Fourth Amendment equivalent and explaining that "[a]n order is also contrary to substantive law when it interferes with an individual's liberty interest to be free from unreasonable searches and seizures. Here, defendant had a liberty interest with which [law enforcement officer] could not interfere absent constitutional justification.").

[160] *Supra* section I, Statement of Undisputed Facts ¶¶ 1, 10-26.

[161] *See United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011); *United States v. Pina-Aboite*, 109 F. App'x 227, 235 (10th Cir. 2004); *see also generally*, *Terry v. Ohio*, 392 U.S. 1 (1968).

hallway. Consequently, Blackmore was not obligated to comply with Carlson's request to move down the hallway.[162]

A reasonable jury could make factual findings that Blackmore did not have a weapon; did not shout, threaten, assault, or act tumultuously; and did not appear to be out of control or on the verge of physical confrontation of anyone. In short, a reasonable jury could find that Blackmore did not do anything that created a reasonable suspicion that she was committing a crime. A reasonable jury could likewise find there were no circumstances that raised safety concerns at the time Carlson asked Blackmore to move down that hall that would have transformed the request into an order.

Accordingly, Carlson's request, even if construed as an order, was not lawful because he had no authority to demand Blackmore comply with his request. Blackmore's compliance to move down the hallway was voluntary. Had Blackmore simply ignored Carlson and wandered off down the hallway back to her room, Carlson could not have stopped her or arrested her. Likewise, Carlson could not authoritatively control Carlson's movements in her own hotel.

Third, it is not clear that Carlson even attempted to give an order. Carlson first said, "Ma'am, let's go talk over there."[163] Then Carlson repeated, "let's go over there."[164] A reasonable jury could find Carlson was only making a request that Blackmore voluntarily move down the hallway and had given no order.[165] This is consistent with the probable cause statement

---

[162] *See United States v. Pina-Aboite*, 109 F. App'x 227, 235 (10th Cir. 2004); *see also generally*, *Terry v. Ohio*, 392 U.S. 1 (1968).

[163] *Supra* section I, Statement of Undisputed Facts ¶ 37.

[164] *Supra* section I, Statement of Undisputed Facts ¶ 40.

[165] *See supra* section III. A. 1.

Carlson prepared on the morning of January 6, 2020, where he explained that he "***asked***
[Blackmore] to speak with me down the hall . . . ."[166]

And fourth, regardless of whether Carlson's request is a lawful order, Blackmore's lack
of compliance is disputed.[167] The video evidence shows Blackmore immediately moved
backwards down the hallway a step after Carlson's initial request, then stopped to continue
speaking to Carlson.[168] Then Carlson repeated his request and said, "let's go over there" and
Blackmore quickly turned and moved further down the hallway.[169] A reasonable jury could find
Blackmore complied with Carlson's request.

Hurricane City's argument about Blackmore's attempt to walk back to the Hotel Lobby
justifying her arrest also fails. Carlson never specifically ordered Blackmore to stay in the
hallway, stay out of the lobby, or to avoid Brangham. And as explained above, a reasonable jury
could make factual findings that do not support Carlson having reasonable suspicion that
Blackmore was committing a crime as was required to detain her in the hallway. Blackmore's
continued presence in the hallway was voluntary. Because the lobby was not a public place, and
because there are disputed issues of material fact regarding Carlson's request and Blackmore's
compliance, Hurricane City Defendants cannot meet their burden to obtain summary judgment
justifying arrest under Utah Code Ann. § 76-9-102(2)(a) for failure to comply with a lawful order
move from a public place.

---

[166] Hurricane City Police Department Warrantless Arrest Probable Cause Statement, docket no. 86-6, filed April 7,
2023 (emphasis added).

[167] *Compare* Motion, docket no. 86, filed April 7, 2023, at 33-34 *with* Opposition, docket no. 110, filed May 10,
2023, at 34.

[168] *Supra* section I, Statement of Undisputed Facts ¶¶ 37-38.

[169] *Supra* section I, Statement of Undisputed Facts ¶ 40.

ii.   Hurricane City Defendants Cannot Meet Their Burden to Show Blackmore Knowingly
Created a Hazardous or Physically Offensive Condition.

Under Hurricane City Defendants' second theory justifying Blackmore's detention and

arrest for disorderly conduct, defendants argue Blackmore created a hazardous or physically

offensive condition.[170] The Utah Code states this type of disorderly conduct occurs when a

person "knowingly creates a hazardous or physically offensive condition, by any act that serves

no legitimate purpose."[171] Hurricane City Defendants do not provide any authority or

explanation for what qualifies as "hazardous or physically offensive" under the statute and the

Incident here does not appear to be the type targeted by the natural reading of this clause.

Moreover, this attempt by Hurricane City Defendants to justify Blackmore's arrest or detention

fails because Hurricane City Defendants did not address the mens rea requirement in the statute,

and because there are disputed material facts.

Necessarily included in the statute is a requirement that the unlawful condition be at a

public place—the statute is meant to protect the public and does not naturally cover dangerous

backyard conditions. As explained above, the Lobby was not a public place at the time of the

incident, preventing the application of this statute to the Incident.

This theory of disorderly conduct also requires a person to act "knowingly."[172] A mens

rea requirement of knowingly means a person has "knowledge, with respect to a result of his

conduct" and is "aware that his conduct is reasonably certain to cause the result."[173] Hurricane

City Defendants do not address this mens rea requirement and cite to no evidence that

---

[170] Motion, docket no. 86, filed April 7, 2024, at 34-35.

[171] Utah Code Ann. § 76-9-102(2)(a).

[172] *Id.*

[173] *State v. Thompson*, 2017 UT App 183, ¶ 44, 405 P.3d 892, 901.

Blackmore was aware that her conduct would create a hazardous or physically offensive condition. This prevents summary judgment on this legal theory of disorderly conduct.

Moreover, Hurricane City Defendants' description of the Incident is disputed by Blackmore and not supported by the video evidence. Nothing in the videos of the Incident show a hazardous or physically offensive condition was created by Blackmore. A natural reading of the statute is that it targets the creation of hazardous or physically offensive environmental or physical conditions. "Physically offensive" is most naturally read to target things perceived by the senses such as conditions that would create offensive odors, annoying or blaring sounds, bright or flashing lights, or the use of lasers that physically irritate eyes. This portion of the statute does not naturally cover situational fear that a physical confrontation may occur.

And even if this statute covers general situational dangers like a possible physical confrontation, factual disputes remain. At summary judgment, the record and reasonable inferences are drawn in favor of Blackmore. A reasonable jury could determine that Blackmore, while upset, did not have a weapon, yell, threaten, physically touch, or appear to be about to do anything similar.[174] Construed in her favor, the summary judgment record does not support a conclusion that Blackmore's actions created a physically offensive or hazardous condition. Summary judgment is denied on this theory of justification for arrest for disorderly conduct.

iii.   Hurricane City Defendants Cannot Meet Their Burden to Show Blackmore Recklessly Created a Risk of Public Alarm by Engaging in Violent, Tumultuous, or Threatening Behavior.

Hurricane City Defendants' third theory that Blackmore's behavior constituted disorderly conduct is that she recklessly created a risk of public alarm by engaging in violent, tumultuous,

---

[174] *See supra* section I, Statement of Undisputed Facts ¶¶ 34.

or threatening behavior.[175] Public alarm necessarily includes being in a public place or at least around a significant amount of the public. As another court found, private fighting in a closed and locked restaurant is not public disorder.[176] As the lobby in the Hotel was not a public place and did not have members of the public present, there was no risk of public alarm.

This theory also requires Blackmore to have acted recklessly, meaning Blackmore was aware of and "consciously disregard[ed] a substantial and unjustifiable risk" of public alarm by engaging in violent, tumultuous, or threatening behavior.[177] Further, recklessness requires that the "risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."[178] Hurricane City Defendants do not address this required mens rea. This prevents summary judgment on this theory.

Disputed fact issues further prevent summary judgment on this theory. The summary judgment record construed in Blackmore's favor does not support this theory of disorderly conduct. The video evidence of Blackmore during the incident shows no threatening behavior. And whether Blackmore's behavior was tumultuous or violent, and if so, whether it was unjustifiably reckless are mixed questions of law and fact. Resolution of such questions is inappropriate for summary judgment unless "reasonable minds cannot differ" as to the conclusion.[179] Up until the point when Blackmore attempted to move past Carlson back towards

---

[175] Motion, docket no. 86, filed April 7, 2023, at 33-34.

[176] *People v. Perry*, 265 N.Y. 362, 365, 193 N.E. 175 (1934) ("Fighting in a private place is at common law no crime unless it amounts to an assault.").

[177] *See* Utah Code Ann. § 76-2-103 *and* Utah Code Ann. § 76-9-102(b)(i).

[178] Utah Code Ann. § 76-2-103.

[179] *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1321 (D. Utah 2019).

the lobby, none of her behavior was threatening, violent, or tumultuous.[180] And any behavior thereafter that could arguably be construed as violent or tumultuous is disputed.

A reasonable jury could make factual findings that support a conclusion that Blackmore's behavior was not violent or tumultuous. For example, it is not clear from the video evidence whether Blackmore or Carlson instigated their collision in the hallway and the parties dispute what happened.[181] And even if Blackmore caused the collision with Carlson, it is not clear whether that was an incidental and innocuous bump or a "violent" shoulder check. It is also not clear whether Blackmore's movement and yelling in the alcove are a reasonable and fearful reaction to an overly aggressive law enforcement officer, or an attempt to get back into the lobby.[182] A jury is required to determine these factual issues and whether the behavior is reckless, violent, or tumultuous. Summary judgment is denied on this theory of disorderly conduct.

2.  The Summary Judgment Record Shows Blackmore Interfered with an Arresting Officer

Hurricane City Defendants argue Blackmore's arrest was justified because she interfered with Carlson and DeMille's efforts to arrest her.[183] In Utah, a "person is guilty" of interference with a peace officer if (1) "the person knows, or by the exercise of reasonable care should have known, that a peace officer is seeking to effect a lawful arrest or detention of that person" and (2) "interferes with the arrest or detention by" (a) the "use of force" or (b) by "refusing to perform any act required by lawful order" that is made by the arresting officer and "necessary to effect

---

[180] *See supra* section I, Undisputed Facts ¶¶ 30-41.

[181] *Compare* Motion at 15-16, Statement of Undisputed Facts ¶¶ 83-88and Motion at 34-36; *with* Opposition at 11-13, 41. *See also supra* section I, Statement of Undisputed Facts ¶¶ 43-45.

[182] *Compare* Motion at 36-37; *with* Opposition at 43. *See also supra* section I, Statement of Undisputed Facts ¶¶ 45-47.

[183] Motion at 37-39.

the arrest or detention," or (c) by "refusing to refrain from performing any act that would impede the arrest or detention."[184]

In Utah, a person cannot physically resist an illegal arrest if the officers are within the scope of their authority.[185] Challenging unlawful detention or arrest in Utah is only permitted through the court system, not through physical resistance at the time of detention or arrest.[186] When evaluating an arrest or detention, the critical facts are those that exist at the time of the seizure.[187] Blackmore's actions after the arrest cannot be used to justify the initial arrest which she challenges. Viewing the summary judgment record in her favor, the evidence demonstrates Blackmore resisted her detention and arrest after the point she should have known she was being detained or arrested.

Resistance to detention or arrest becomes unlawful when the resisting party "knows, or by the exercise of reasonable care should have known, that a peace officer is seeking to effect a lawful arrest or detention . . . ."[188] Although Carlson did not initially communicate why he grabbed Blackmore, Blackmore should have known that Carlson was attempting to detain or arrest her when Carlson pushed her against the wall and began pulling her hands behind her back.[189] Blackmore argues she did not know she was being put under arrest because Carlson did not explain anything until after Carlson and DeMille had started to handcuff her.[190] But at the very latest, the first time that Carlson ordered Blackmore to put her hands behind her back, it

---

[184] Utah Code Ann. § 76-8-305(1).

[185] *State v. Trane*, 2002 UT 97, ¶ 33, 57 P.3d 1052, 1061.

[186] *Trane,* 2002 UT at ¶¶ 33-35, 57 P.3d at 1061.

[187] *Hemry v. Ross*, 62 F.4th 1248, 1254 (10th Cir. 2023).

[188] Utah Code Ann. § 76-8-305.

[189] *Supra* section I, Statement of Undisputed Facts ¶ 47.

[190] Opposition at 36.

would have been clear to a reasonable person that Carlson was attempting to detain or arrest Carlson.[191] After this point, Blackmore did not put her hands behind her back, resisted Carlson and DeMille's efforts to pull her hands behind her back, and tried to turn to face Carlson and DeMille.[192] Blackmore's actions created probable cause that she was interfering with an arresting officer and justified her arrest.

Because Blackmore resisted her detention and arrest after she should have known she was being detained or arrested, the Hurricane City Defendants sufficiently demonstrated they are entitled to summary judgment on Blackmore's claim for unlawful seizure. The Motion is GRANTED and Blackmore's first cause of action for unlawful seizure is DISMISSED.

3. Hurricane City Defendants Are Entitled to Summary Judgment on Blackmore's First Cause of Action for Unlawful Seizure Based on Qualified Immunity

In addition to the factual basis for an arrest for resisting detention which defeats Blackmore's unlawful seizure claim, Hurricane City Defendants are entitled to qualified immunity. Qualified immunity protects government officials "performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."[193] When a defendant asserts qualified immunity as an affirmative defense on summary judgment, "the burden shifts to the plaintiff, who must clear two hurdles" to defeat the defendant's motion.[194] The plaintiff must (1) "demonstrate on the facts alleged . . . that the defendant violated

---

[191] *Supra* section I, Statement of Undisputed Facts ¶ 48.

[192] *Supra* section I, Statement of Undisputed Facts ¶¶ 48-51.

[193] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

[194] *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

his constitutional or statutory rights," and (2) "that the right was clearly established at the time of the alleged unlawful activity."[195]

A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[196] The Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined at a high level of generality."[197] A right is not clearly established if it does not "clearly prohibit the officer's conduct in the particular circumstances before him."[198] It must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[199] Perfectly on-point precedent for the exact action challenged is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate."[200] "Reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits" can be used to "demonstrate that a constitutional right is clearly established."[201] Qualified immunity's demanding standard protects all police officers except the "plainly incompetent or those who knowingly violate the law."[202]

As explained above,[203] the summary judgment record does not show grounds for the warrantless arrest of Blackmore for disorderly conduct. Because Blackmore's arrest for

---

[195] *Id.*

[196] *Anderson*, 483 U.S. at 640.

[197] *Whit*, 580 U.S. at 79 (cleaned up).

[198] *Wesby*, 583 U.S. at 63.

[199] *Id.*

[200] *White,* 580 U.S. at 79.

[201] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (cleaned up) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir. 2006)).

[202] *Wesby*, 583 U.S. at 63.

[203] *See supra* section III.C.1.

disorderly conduct lacked probable cause, the arrest was a violation of Blackmore's Fourth Amendment right to be free from warrantless arrest. [204] This constitutional violation satisfies the first prong of the test to overcome qualified immunity.

However, Carlson and DeMille are still entitled to qualified immunity because the right was not clearly established as applied to the specifics of the Incident. Blackmore argues that Carlson and DeMille should have known they were violating her rights because it was clearly established that they needed probable cause for an arrest. This level of abstraction is insufficient. The Supreme Court has reaffirmed "the longstanding principle that 'clearly established law' should not be defined at a high level of generality."[205] A right is not clearly established if it does not "clearly prohibit the officer's conduct *in the particular circumstances* before him."[206] It must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[207]

No controlling case law or robust body of case law from other circuits gave notice to Carlson or DeMille that arresting Blackmore for disorderly conduct under the circumstances was a clear violation of her rights. There is not clear law establishing whether the Hotel lobby was a public place, and the analysis is even more difficult because the front door, normally locked at that time, was ajar.[208]

---

[204] As explained above, the officers did have probable cause that Blackmore was interfering with a police officer, which provides an alternate basis to dismissal of Blackmore's unlawful seizure claim. As explained more fully in the Memorandum Decision and Order Granting [147] Motion for Leave to Supplement Motion for Summary Judgment and Granting [144] Request for Judicial Notice of Jury Verdict and Instructions, docket no. 157, the pre-trial determination of the justice court in the state criminal case finding that Carlson and DeMille had probable cause, and the jury verdict finding Blackmore not guilty in the justice court trial are irrelevant to the analysis here. The pre-trial determination is not binding or preclusive on this issue, and the jury verdict of not guilty was decided with a different evidentiary standard that prevents the use of the acquittal here.

[205] *Pauly*, 580 U.S. at 79 (cleaned up).

[206] *Wesby*, 583 U.S. at 63 (emphasis added).

[207] *Id.*

[208] *Id.* ¶ 6.

Blackmore does not cite any caselaw demonstrating a sufficiently similar encounter to provide Carlson and DeMille—or any reasonable officer—notice that arresting Blackmore under these circumstances was a clear violation of her right to be free from warrantless arrest. The Incident was quick, fluid, and Carlson and DeMille were forced to act very quickly. Hindsight shows that their reaction may have strayed from the ideal. Because there is not sufficient law clearly establishing the unlawfulness of this arrest, Blackmore cannot meet the second prong to overcome qualified immunity. Consequently, Carlson and DeMille are entitled to qualified immunity for arresting Blackmore for disorderly conduct[209].

### D. Blackmore's Claim for Failure to Train Fails Because Blackmore Has Not Sufficiently Demonstrated a Widespread Practice of Unlawful Arrests

Blackmore's Fourth Cause of Action alleges Hurricane City "knowingly and recklessly failed to adequately train and/or supervise their Officers and Deputies to adhere to the proscriptions against illegal and unreasonable seizures and arrests . . . and other prohibited conduct . . . ."[210]

A local government or municipality can be liable under 42 U.S.C. § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[211] However, local governments are not vicariously liable for employee actions and are "responsible only their own illegal acts."[212] A plaintiff injured by a

---

[209] Even if it were determined that Carlson and DeMille did not have probable cause to arrest Blackmore for interfering with an arresting officer, Carlson and DeMille would also have qualified immunity against this legal claim. Although an arrest without probable cause would have been a violation of Blackmore's constitutional right to be free from arrest without probable cause, it was not clearly established that Carlson and DeMille could not arrest her for resisting arrest or detainment where Blackmore was screaming, trying to turn around, and attempting to keep her arms from being pulled behind her after being told to put her hands behind her back.

[210] Amended Complaint ¶181.

[211] *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

[212] *Id.* (cleaned up) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

"deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably."[213] Local government liability under § 1983 must be based on injuries caused by "official municipal policy."[214] "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[215]

A failure to train employees to avoid violating the rights of the public can create municipal liability.[216] However, because municipal culpability is "most tenuous" for failure to train claims, a municipality's training failure "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact."[217] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[218] If a policy itself is not unconstitutional, a plaintiff will need to show "considerably more proof than [a] single incident" to demonstrate "both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."[219] Ordinarily, a plaintiff must show "a pattern of similar constitutional violations by untrained employees" to "demonstrate deliberate indifference for purposes of failure to train."[220] In *Connick v. Thompson*, the Supreme Court held that four

---

[213] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 406–07 (1997).

[214] *Connick,* 563 U.S. at 60.

[215] *Id.* at 61.

[216] *Id.*

[217] *Id*.

[218] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 410.

[219] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

[220] *Connick*, 563 U.S. at 62.

cases overturned for Brady violations were insufficient to put the district attorney on notice for a failure to train because the violations were not similar enough to the alleged violation.[221]

Blackmore does not allege any specific Hurricane City Police Department policy that is constitutionally deficient, nor that a policymaker's actions caused injury to Blackmore.[222] Instead, the Blackmore argues that the "actions of Officers Carlson and DeMille in this case support a custom and practice of warrantless arrests without probable cause."[223] But Blackmore points to no other similar occurrences of allegedly unlawful arrests where there was no probable cause. Blackmore also alleges Carlson had a history of problematic reporting that the Hurricane City Police Department was aware of, but Blackmore's single citation to the record on this point is to a section of Carlson's deposition where he describes an internal investigation about one incomplete report.[224] Additionally, Carlson explained that single incomplete report was for an incident early in his career where he started a report, even though a report was not required for the underlying situation, and he was busy and forgot about the report.[225] Moreover, Blackmore does not explain how Carlson's failure to file a report is evidence of a widespread practice of arrests without probable cause. Blackmore has not presented sufficient evidence to demonstrate a widespread practice of unlawful arrests without probable cause.

Because Blackmore has failed to produce evidence of a widespread practice of unlawful arrests lacking probable cause and has not pointed to any specific policy that is unconstitutional, Blackmore's fourth claim against Hurricane City for failure to train is DISMISSED.

---

[221] *Id.*

[222] *See generally* Opposition.

[223] Opposition at 49-50.

[224] Opposition at 49-50.

[225] Carlson Depo., taken December 19, 2022, docket no. 86-5, at 177:3-178:9.

**E.  Blackmore's State Constitutional Claims are Dismissed Because they are Duplicative of Blackmore's Federal Claim and Not Clearly Established**

Blackmore's sixth cause of action alleges that the Hurricane City Defendants violated her civil rights protected by the Utah Constitution. Specifically, in the Amended Complaint Blackmore alleges violations of Article I, Section 7 ("Section 7"),[226] which states that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[227] Blackmore alleges that Carlson and DeMille violated Section 7 through the use of "unreasonable and excessive force" employed during the incident.[228] Blackmore also alleges that Carlson and DeMille violated Article I, Section 9's ("Section 9") prohibition on treating arrestees with "unnecessary rigor."[229] In her Opposition, Blackmore shifts away from the Amended Complaint's allegations slightly and argues the basis of the violation of her state rights was an "outrageous warrantless arrest without probable cause."[230] But regardless, Blackmore's state-based constitutional claims fail because Blackmore does not satisfy the requirements set forth by the Utah Supreme Court for bringing a suit for damages under the Utah Constitution.

To "ensure that [state constitutional] damage actions are permitted only under appropriate circumstances," the Utah Supreme Court has explained that a party bringing a private suit for damages under the state constitution must: (1) "establish that he or she suffered a 'flagrant' violation of his or her constitutional rights"; (2) "establish that existing remedies do not redress his or her injuries"; and (3) "establish that equitable relief, such as an injunction, was and is

---

[226] Amended Complaint ¶¶ 207-208.

[227] Utah Const. art. I, § 7.

[228] Amended Complaint ¶¶ 207-208.

[229] Utah Const. art. I, § 7; Amended Complaint ¶¶ 210-211.

[230] Opposition, docket no. 110, filed May 10, 2023, at 53.

wholly inadequate to protect the plaintiff's rights or redress his or her injuries."[231] Blackmore's sixth cause of action fails because she cannot establish that she suffered a flagrant violation of her state constitutional rights under Section 7 and Section 9, and because she has existing remedies for an unlawful arrest without probable cause.

1.   Blackmore Has Not Shown Alleged Violations of Clearly Established Rights

*Spackman's* requirement that Blackmore establish flagrant violations of her constitutional rights requires "that a defendant have violated 'clearly established' constitutional rights of which a reasonable person would have known."[232] A right is clearly established if the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[233] To demonstrate a right is clearly established requires "clear, on point precedent recognizing the claimed right," or "the defendant's conduct must be egregious and unreasonable."[234] In considering the unnecessary rigor clause of the Utah Constitution, the Utah Supreme Court has further explained that circumstances must be previously identified, or "the nature of the act presents an obvious and known serious risk of harm to the" arrestee and, "knowing of that risk, the official acts without other reasonable justification."[235] Because there is not clear precedent or egregious conduct, Blackmore cannot demonstrate a violation of state constitutional rights that were clearly established under either Section 7 or Section 9.

---

[231] *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 24-25, 16 P.3d 533, 538.

[232] *Spackman*, 2000 UT 87, ¶ 23, 16 P.3d at 538 (cleaned up).

[233] *Id.* (cleaned up).

[234] *Brown v. Larsen*, 653 F. App'x 577, 578 (10th Cir. 2016) (citation omitted).

[235] *Dexter v. Bosko*, 2008 UT 29, ¶ 25, 184 P.3d 592, 598.

Section 7 protects the right to due process.[236] Blackmore's allegation against the Hurricane City Defendants under Section 7 is based on allegations of excessive force.[237] But Blackmore presents no Utah caselaw demonstrating that Section 7 has ever been used to remedy excessive force allegations in circumstances similar to her allegations. Instead, Utah courts look to the Fourth Amendment of the Federal Constitution and its state counterpart, Article I, Section 14, of the Utah Constitution ("Section 14").[238] And Blackmore's second cause of action for excessive force based on the Fourth Amendment and the Utah Constitution has previously been dismissed.[239] Blackmore cannot establish a flagrant constitutional violation based on Section 7 because she cannot demonstrate a clearly established right relevant to the circumstances here.

The relevant portion of Section 9 protects "prisoners or arrested persons from treatment that is unnecessarily rigorous."[240] Blackmore alleges the Hurricane City Defendants violated this protection when Carlson and Demille "physically assaulted, handcuffed and detained her as stated herein."[241] However, Blackmore presents no case in which a Utah court used the unnecessary rigor protections of Section 9 in a similar circumstance.

In *Brown v. Larsen*, the Tenth Circuit rejected a claim under the Section 9's unnecessary rigor clause where the plaintiff, an arrestee in handcuffs, was injured in a car accident after an officer declined to seatbelt the plaintiff in a prison transport van after the plaintiff requested to be seatbelted.[242] The Tenth Circuit explained that the plaintiff had not pointed to any established

---

[236] Utah Const. art. I, § 7.

[237] Amended Complaint ¶¶ 207-211.

[238] *See e.g. State v. Evans*, 2021 UT 63, ¶ 24, 500 P.3d 811, 817.

[239] Memorandum Decision and Order Denying in Part and Granting in Part the Hurricane Defendants' [19] Motion to Dismiss, docket no. 36, filed December 1, 2021.

[240] *State v. M.L.C.*, 933 P.2d 380, 385 (Utah 1997).

[241] Amended Complaint ¶¶ 210-211.

[242] *Brown v. Larsen*, 653 F. App'x 577 (10th Cir. 2016).

precedent and explained that the conduct alone was not "egregious, unreasonable, and necessarily subjected [plaintiff] to a substantial risk of serious injury."[243]

Similarly, Blackmore presents no Utah precedent. And even when viewed in a light most favorable to Blackmore, the factual record does not include conduct after Blackmore's arrest that is "egregious, unreasonable, and necessarily subjected [Blackmore] to a substantial risk of serious injury."[244] Blackmore cannot demonstrate a flagrant violation of Section 9 because there is neither egregious conduct nor precedent clearly establishing a relevant right based on this factual record.

Even if the basis for the Blackmore's state constitutional cause of action under Sections 7 and 9 is an arrest without probable cause as argued in her Opposition, Blackmore cannot demonstrate a flagrant violation because there is no Utah caselaw clearly establishing an arrest without probable cause violates either Section 7 or Section 9. Instead, Utah courts look to the Fourth Amendment and its state counterpart, Section 14 to evaluate warrantless arrests.[245] Therefore, Blackmore cannot establish a flagrant violation of Section 7 or Section 9 based on an arrest without probable cause. Under either Section 7 or Section 9, Blackmore's sixth cause of action fails.

2. Existing Remedies Bar Blackmore's State-Based Claim for an Arrest Without Probable Cause

Even if Blackmore's sixth cause of action was construed to be brought under Section 14, Blackmore's sixth cause of action would fail because existing remedies exist. Section 14 "prohibit[s] unreasonable searches and seizures."[246] Although Utah courts have expressed the

---

[243] *Id.* at 580.

[244] *See id.*

[245] *See e.g., Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 98, 250 P.3d 465, 488.

[246] *State v. Trane*, 2002 UT 97, ¶ 22, 57 P.3d 1052, 1058.

potential for greater protections under Section 14,[247] the Utah Supreme Court routinely evaluates the constitutionality of arrests by looking to the federal constitution's protections in the Fourth Amendment and has explained that the protections of Section 14 and the Fourth Amendment are nearly identical.[248]

Blackmore's first cause of action alleges an arrest without probable cause and is brought under the Fourth Amendment and 42 U.SC. § 1983.[249] Construing Blackmore's sixth cause of action under the appropriate Utah constitutional provision, Section 14, would create parallel claims. In some cases, courts have allowed parallel state claims to continue where there is potential a jury could find for the plaintiff on a state claim, but not on the parallel federal claim.[250] In other cases, courts have dismissed parallel state claims where a state claim would not provide redress beyond the § 1983 claim.[251] When a plaintiff does not make a showing that the § 1983 claim cannot provide recovery for all alleged injuries, dismissal of the state claim is appropriate.[252]

Blackmore does not explain how her first cause of action under § 1983 would not redress her alleged injuries beyond generally arguing that state and federal claims are handled

---

[247] *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 98, 250 P.3d 465, 488.

[248] *See e.g*, *State v. Trane*, 2002 UT 97, ¶ 27, 57 P.3d 1052, 1060; *State v. Evans*, 2021 UT 63, ¶ 24, 500 P.3d 811, 817; *State v. Anderson*, 2015 UT 90, ¶ 25, 362 P.3d 1232, 1239.

[249] Amended Complaint ¶¶ 125-139.

[250] *Finlinson v. Millard Cnty.*, 455 F. Supp. 3d 1232, 1245 (D. Utah 2020).

[251] *Nielson v. City of S. Salt Lake*, No. 2:06-CV-335-CW, 2009 WL 3562081, at *9 (D. Utah Oct. 22, 2009) ("The state constitutional claims do not provide for any further redress than Nielson can obtain under § 1983. Accordingly, those claims are dismissed.").

[252] *Cavanaugh v. Woods Cross City*, No. 1:08-CV-32-TC-BCW, 2009 WL 4981591, at *6 (D. Utah Dec. 14, 2009), aff'd, 625 F.3d 661 (10th Cir. 2010) ("Given the Utah Supreme Court's reluctance to expand direct remedies under the Utah Constitution, the court will not create such a remedy here where the plaintiff has not made a showing that § 1983 cannot provide recovery for all alleged injuries."); *Hoggan v. Wasatch Cnty.*, No. 2:10CV01204-DS, 2011 WL 3240510, at *2 (D. Utah July 28, 2011) ("Because she has not established that existing remedies do not redress her injuries, Plaintiff's Third Claim for Relief of the Amended Complaint must be dismissed."); *Mglej v. Garfield Cnty.*, No. 2:13-CV-713, 2014 WL 2967605, at *4 (D. Utah July 1, 2014).

differently.[253] Blackmore does not even specifically reference Section 14 in the allegations specific to her sixth cause of action in her Amended Complaint,[254] nor does Blackmore attempt to explain why Section 14 creates stronger or different protections than the Fourth Amendment in her Opposition.[255] The *Spackman* court noted that the requirement for plaintiffs to establish the inadequacy of existing remedies before bringing suits for money damages under the Utah Constitution is "meant to ensure that courts use the common law remedial power cautiously and in favor of existing remedies."[256] Accordingly, Blackmore's parallel state claim, even if construed to be based on an arrest without probable cause, is DISMISSED against the Hurricane City Defendants.

---

[253] Opposition at 53-54.

[254] Amended Complaint ¶¶ 205-215.

[255] Opposition at 53-54.

[256] *Spackman*, 2000 UT 87, ¶ 24, 16 P.3d at 539.

## IV. ORDER

IT IS HEREBY ORDERED that the Motion[257] is GRANTED as follows:

1. Blackmore's first claim against Carlson and DeMille for unlawful seizure is DISMISSED WITH PREJUDICE;

2. Blackmore's fourth claim against Hurricane City for a failure to train or supervise is DISMISSED WITH PREJUDICE;

3. Blackmore's fifth claim against Carlson, DeMille, and Hurricane City for abuse of process is DISMISSED WITH PREJUDICE;

4. Blackmore's sixth claim for violation of state civil rights is DISMISSED WITH PREJUDICE against the Hurricane City Defendants; and

5. All claims brought by Vincent Blackmore against the Hurricane City Defendants are DISMISSED WITH PREJUDICE.


Signed June 7, 2024.


BY THE COURT

_____
David Nuffer
United States District Judge

---

[257] Defendants Jared Carlson, Eric DeMille, and Hurricane City's Motion (1) for Summary Judgment; and, Alternatively, (2) to Stay,  docket no. 86, filed April 7, 2023.