Frank D. Mylar (5116)
Mylar Law, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
office@mylarlaw.com

Attorneys for Defendant La-Norma Ramirez

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DANYALE BLACKMORE,<br><br>Plaintiff,<br><br>v.<br><br>LA-NORMA RAMIREZ,<br><br>Defendant. | **MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF ANNETTE B. CURTIS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 4:21-cv-00026-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

Defendant, La-Norma Ramirez, through her attorney, Frank D. Mylar, respectfully submit this Motion to Exclude or Limit the Testimony of Annette B. Curtis. The Court should grant Defendant's Motion for the following reasons:

**Grounds for Motion**

Plaintiffs intend to offer testimony from Annette B. Curtis ("Curtis") regarding the treatment and diagnosis of Danyale Blackmore, whether a woman may suffer from PTSD after being required to disrobe in the presence of several men, and to rebut the opinions of Dr. Kennon Tubbs. Although the expert designation is couched as a "reply" it is really not much different from the prior social worker's expert report, Elizabeth York and it is completely duplicative of York's testimony and must be excluded for that reason alone. For part of the same reasons York's testimony should be excluded, Curtis's testimony should also be excluded in that she does not have

expertise to diagnose PTSD in this case, and only recently did a paper review of this matter before she drafted her expert report. Further, her deposition has not been taken and Defendant requests additional time to be able to supplement this motion after it deposes the witness on May 9, 2025 and after we obtain a copy of the certified transcript of the deposition. Wherefore, the court should exclude this witness for the reasons stated in this motion and the motion to exclude Elizabeth York.

# ARGUMENT

**1. The Court should not recognize Curtis as an expert witness.**

Being also governed by the relevancy standards set forth in Federal Rules of Evidence 401 and 402, the Rule for admissibility of expert testimony states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

USCS Fed Rules Evid R 702.

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918.

*Id* (Notes of Advisory Committee on Rules).

"The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact." *U.S. v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993). Rule 702's "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a

precondition to admissibility. . . . This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993).

Curtis's testimony fails to meet the criteria of FRE 702. As stated above, the proponent of an expert witness must demonstrate to the court that it is more probable than not that that expert's specialized knowledge of an issue to be determined will actually assist the trier of fact, is "based on sufficient facts or data," "is the product of reliable principles and methods," and that "the expert's opinion reflects a reliable application of [those] principles and methods to the facts of the case." USCS Fed Rules Evid R 702.

"The proponent of expert testimony bears the burden of showing that [**18] its proffered expert's testimony is admissible." United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). Further,

> 'Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, *before permitting a jury to assess such testimony*.' In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion. *See* Fed. R. Evid. 702. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in Daubert.

*Id.* (Cleaned up) (emphasis added).

Taking each element in turn, Curtis's CV (attached hereto as Exhibit 1) does not sufficiently show that that her "scientific, technical, or other specialized knowledge" can help the jury to understand any evidence or determine the only fact at issue, which is whether a strip search occurred. Curtis cursorily mentions some specific experience in her report related to trauma and PTSD, but her CV fails to support those assertions. Nothing in Curtis's CV suggests that she has the requisite knowledge and experience to opine on matters related to adult female sexual trauma or PTSD, or on the qualifications of a medical doctor to treat PTSD or other trauma related disorders. For example, her "Areas of Focus" section cursorily states "sexual abuse treatment,"

but does not expand on what kind of abuse, what kind of treatment, nor how long it has been an area of focus. (Ex. 1, Curtis's CV at 5). Her work experience from 2002-2004 mentions that she developed programs for sex-offender treatment and sexual abuse. (*Id*. at 4), but that statement does not specify what kinds of programs, what they entailed, to what or whom they were directed, what the programs were intended to accomplish, etc. From 2016-2024, she supervised employees and departments who conducted retreats for female victims of sexual abuse. (*Id*. at 3). This statement does not show any specific experience, either. Supervising a department that conducts retreats is only tangentially related to the subject at hand and does not show any specific knowledge or specialty. Additionally, most of Curtis's career (23 years) has been working with children in DCFS custody. (*Id*. at 2). Beyond that, she states that she has worked with female survivors of childhood sexual abuse, and that she specializes "in trauma and PTSD," that she has had several years of training in trauma and sexual abuse, and that she has a "Certificate in Complex Trauma and Dissociation." (*Id*.).

None of the information provided is enough to demonstrate to the Court that Curtis has any expertise that could demonstrate to the Court that it is more probable than not that her testimony meets any of the elements of Rule 702, especially since this case is only about whether a strip search actually occurred or not and is not about sexual abuse. Simply stating that one specializes in an area does not make it so, and even if it did, it would not make clear how long, or to what degree. Stating that she has had several years of training in trauma and sexual abuse could simply mean that she has taken a class or two over several years, and the word "several" itself is ambiguous. Additionally the Complex Trauma Certificate to which she refers could simply mean that she completed a four-hour course or even a weekend workshop on complex trauma, neither of which could possibly make one an expert in the field. It is the proponent's burden to demonstrate

expertise to the court, not the opponents nor the court's burden to attempt to extract from context that a witness *might* qualify as an expert. Rule 702 is unambiguous about that. Therefore, the Court should not recognize Curtis as an expert witness and should prohibit her from testifying.

2. **Curtis's testimony is unreliable.**

In *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1999) and subsequently *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999), the Supreme Court established and confirmed a "gatekeeper" role for District Courts, charging them with ensuring that expert testimony is both relevant and reliable as required by the Federal Rules of Evidence.

An expert witness is required to provide a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." FRCP 26(a)(2)(B)(i). "The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact." *U.S. v. Rangel-Arreola,* 991 F.2d 1519, 1524 (10th Cir. 1993). Rule 702's "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. . . . This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591-92. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *GE v. Joiner,* 522 U.S. 136, 146 (1997). Courts routinely exclude expert testimony that is based on nothing more than speculation. *See, e.g., Jetcraft Corp. v. Flight Safety Int'l,* 16 F.3d 362, 366 (10th Cir. 1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Assoc., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (expert testimony excluded as "tentative and speculative").

That is, the "trial judge in all cases of proffered expert testimony *must* find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." FRE 702 (Notes of Advisory Committee on 2000 amendments) (emphasis added). An "expert may not simply recite a factual narrative from one party's perspective, granting it credibility, when he has no personal knowledge of the facts addressed." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 280 (D. Conn. 2017); *see also Ngatuvai v. Lifetime Fitness*, No. 2:16-cv-39-JNP-DBP, 2020 U.S. Dist. LEXIS 166651, at *30 (D. Utah Sep. 10, 2020) (refusing to allow an expert witness "without personal knowledge of the disputed facts . . . to testify to the truth of said facts"). "When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment." *Magoffe v. JLG Indus.*, No. CIV 06-0973 MCA/ACT, 2008 U.S. Dist. LEXIS 99080, at *50 (D.N.M. May 7, 2008) (internal citation and quotation marks omitted).

Moreover, expert testimony may be excluded "'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962) (quoting *United States Smelting Co. v. Parry*, 166 F. 407, 411, 415 (8th Cir. 1909)). An expert's opinions "should not unduly invade the province of the jury when the assistance of the witness is unnecessary." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 889 (10th Cir. 2006) (citing *United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005)). Furthermore, even if evidence is minimal probative, it can be excluded

when the value is outweighed by the chance of prejudice, including "undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

Curtis is a Licensed Clinical Social Worker (LCSW), not a medical doctor, as is Dr. Tubbs and not a psychologist. It would not be expected that an LCSW would know the scope of the ability of an M.D. to diagnose and treat mental health issues, especially one who has spent the majority of his career providing healthcare in jails, which includes a substantial amount of mental healthcare. This is evidenced by Curtis's statements that Dr. Tubbs does not have sufficient experience to "treat or work with women outside the jail or prison environment," or that he has not "specifically worked with women who have experienced sexual trauma." (Ex. 2, Curtis's Report, 2). This statement is not true and she has no basis to be able to make such a statement of Dr. Tubbs' experience with treatment of women. Further, Curtis undoubtedly has no experience treating inmates who have been strip searched or just given a pat down search in a jail. She also appears to assume that Dr. Tubbs only focuses on the treatment of inmates for the crimes they committed.

Additionally, she states that Dr. Tubbs is not "actively *treating* women who are trying to work through sexual trauma." (*Id*.) (Emphasis included in original). This is an assumption and nowhere in the record. Regarding her own experience, Curtis does not state anywhere that that she has any experience in the mental health field with regard to jails, nor does she state what the extent of her experience is in dealing with sexual trauma or PTSD. She selectively ignores Tubb's statement in his deposition that he treats his inmate patients that have PTSD on an almost weekly basis (See Ex. 3, Report of Dr. Kennon Tubbs, 1; see also Ex. 4, Tubbs Deposition, 40:8-18), and she fails to provide any reason for why a licensed medical doctor who has spent the majority of

his career treating inmates, many of whom have PTSD, is not qualified to treat cases of sexual trauma with women.

However, if Curtis had any experience with jails, she would know that jails house both male and female inmates, that the attending physicians tend to both sexes, and that both populations have many members with PTSD, much of it stemming from sexual trauma or assault. Thus, her opinions as to Dr. Tubbs are not properly grounded and well-reasoned, nor does she show that they are based on sufficient facts or data or on reliable principles and methods. Thus, her entire testimony as it relates to Dr. Tubbs is inaccurate and fails to meet the requirements of Rule 702, and the Court should exclude her from testifying. She further does not even claim to know anything about Dr. Tubbs.

Regarding the remainder of Curtis's testimony, it is apparent that she was not brought in simply to review the record and determine the possibility of a speculative cause for PTSD. It appears that Plaintiff engaged Curtis on the eve of the close of expert discovery to bolster the testimony of Plaintiffs' proposed non-retained experts, Elisabeth York, and Dr. Scott Allen, who she likely realized after their depositions, would not be strong witnesses. It is not a valid basis for a rebuttal expert that one's underlying expert is shown not competent to testify.

Curtis attempts to diagnose Plaintiff through her use of York's depositions. (Ex. 2, Curtis Report, 3-4). Curtis later states that "there are other criterion necessary to meet the diagnosis of PTSD," fails to enumerate what those criterion are and how they must be applied, and ultimately diagnoses Plaintiff with PTSD. (*Id*. at 3-5). Curtis further uses other non-diagnoses to diagnose her 5 years after the fact and on the eve of trial. A second-hand diagnosis on the eve of trial is suspect and should not be deemed reliable. Even if one were able to make an accurate second-hand diagnosis, Curtis does not sufficiently explain how. She simply discusses a few statements from

York's report, then discusses a few—but not all—of the necessary criteria for a PTSD diagnosis. Curtis does not show how her facts or data are sufficient, nor whether her principles and methods are reliable, or reliably applied. Therefore, Curtis's testimony is unreliable because it fails to meet the criteria of FRE 702, and the Court must exclude her from testifying.

3. **Curtis's testimony is not relevant and would create undue delay, waste time, prejudice, or needlessly present cumulative evidence.**

We need to shorten the trial and first place to look is duplicative expert testimony. Why does Plaintiff have 4 expert witnesses? That is overkill in even a very complex case, but this is just a simple case about whether a strip search did or did not happen.

"Expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation . . . .'" *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962) (*quoting United States Smelting Co. v. Parry*, 166 F. 407, 411, 415 (8th Cir. 1909)). An expert witness's opinion "should not unduly invade the province of the jury when the assistance of the witness is unnecessary." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 889 (10th Cir. 2006) (*citing United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005)). Furthermore, even if evidence has minimal probative value, it can still be excluded when the probative value is outweighed by the chance of prejudice, including "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Curtis's testimony has little, if any, probative value. is cumulative. As stated above, it appears that Plaintiff sought her testimony to reinforce the PTSD diagnosis of Elisabeth York.

Curtis mainly just repeats what York says in her report and refers to York's deposition and report to form her opinions in this case. The opinions are duplicative and this factor alone would cause prejudice to Defendant and is reason to exclude her. We do not need four experts, essentially all saying the same thing and all trying to prop up Plaintiff's version of the facts. None of the experts, including Curtis should be able to testify to Plaintiff's version of the facts. Nobody even diagnosed Plaintiff with PTSD until after Defendant took Plaintiff's deposition and highlighted the fact that it she had never been diagnosed. Curtis's testimony is only aimed at trying to prop up the failed testimony of York and that is not the proper basis for a rebuttal expert. Plaintiff has two LCSWs testify both only about PTSD and trying to prop up the testimony of the Plaintiff.

4. **Defendant requests leave to supplement this Motion.**

Defendant brings this Motion based solely on Curtis's report. Curtis's deposition is not until May 9, 2025. Like the other experts, Defendant believes her deposition will reveal further bases for the exclusion of her testimony. Defendant requests additional time to supplement this motion with more concrete examples and information shortly after the deposition and when an expedited transcript can be obtained.

**Wherefore:** The Court should not recognize Annette B. Curtis as an expert and should exclude her testimony.

Dated this 28th day of March 2025.

/s/ *Frank D. Mylar*

Frank D. Mylar
Attorney for Defendant La-Norma Ramirez