**Expert Report**

Re. DANYALE BLACKMORE V. WASHINGTON COUNTY, JARED CARLSON, ERIC DEMILLE, LA-NORMA RAMIREZ, and HURRICANE CITY
Case No. 4:21-cv-00026-DN-PK

Kennon Tubbs MD, CCHP-P
13584 Carolina Hills Court
Draper, Utah 84020
(801) 502-3473
Jailmd@gmail.com
February 12, 2025


Frank D. Mylar
Mylar Law, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121

Dear Mr. Mylar,

      I am a family practice physician and have practiced at the Utah State Prison for 15 years. My educational background is documented in the attached curriculum vitae. I currently work as the Medical Director for eleven county jails throughout Utah and Wyoming. The Utah counties include Utah, Juab, Wasatch, Summit, San Pete, Garfield, and Tooele, and the Wyoming counties are Lincoln, Uintah, Sweetwater, and Teton. I supervise three physician assistants and two nurse practitioners. I also supervise nurses and establish protocols for nursing care at these facilities. I am familiar with the standards of care required of nursing (RN, LPN, CNT), as well as providers (MD, PA, NP) in a correctional facility. I have treated and cared for patients who have Post Traumatic Stress Disorder (PTSD) and chronic mental health issues on a regular basis—almost weekly. I am a board certified family physician by the American Board of Family Physicians and a certified provider by the National Correctional Commission on Health Care (NCCHC).

      I have reviewed the following materials concerning Mrs. Danyale Blackmore:
1. Amended Complaint Document 122 Filed 5/25/23 – 31 pages
2. Elizebeth York Psychotherapy Progress Notes – 6 pages (York001-006)
3. Arresting prisoner questionnaire Exh. #6 – 1 page (WACO00009)
4. Medical screening documents – 3 pages (WACO00052-00054)
5. Declaration Marc Boyd VanDam – 7 pages (Document 78)
6. Declaration La Norma Ramirez – 4 pages (Document 79)
7. Probable cause statement – 3 pages (WACO00006-00008)
8. Expert Witness disclosure – 5 pages (Document 75)
9. Court motion for summary judgement decision – 30 pages (Document 155)
10. Part deny grant and strike answer to amended complaint – 4 pages (Document 158)
11. Exhibit A Body Camera footage of arrest – 27 minutes (Document 19 Exhibit A)
12. Exhibit B DeMille Body camera footage – 25 minutes (Document 19 Exhibit B)
13. Deposition of Danyale Blackmore – 225 pages
14. Satori Ketamine records – 7 pages (Satori001-007)
15. Deposition video of Elizabeth York counselor
16. Deposition video of Scott Allen MD anesthesiologist

I have specifically reviewed these records in order to determine, within a reasonable degree of medical certainty, if the arrest and booking procedures were appropriate and consistent with the standard of care with respect to Danyale Blackmore while detained by the Washington County Jail. I have evaluated the records as to whether the available evidence indicates that Washington County Jail and its staff, Jared Calson, Eric DeMille, and La-Norma Ramirez, provided objectively reasonable care in regards to arresting, booking, and releasing Blackmore. Blackmore reports PTSD as a result of the arrest and booking procedure. Mrs. Blackmore was in custody for approximately 90 minutes on January 6, 2020.

**Methodology:**

I provide the opinions in this report to a reasonable degree of certainty based on my personal knowledge, training, and experience in primary health care in the community setting, as well as my personal experience and knowledge of health care delivery within the correctional setting. I have also reviewed articles in Up To Date and American Family Physician on PTSD. I am familiar with the National Commission on Correctional Health Care (NCCHC) standards and American Correctional Association (ACA) standards for healthcare in correctional facilities.

**Overview of Danyale Blackmore PTSD:**

Eric DeMille and Jared Carlson were dispatched to the My Place Hotel in Hurricane, Utah, on January 6, 2020, to help a patron, Mr. Brangham, who had locked himself out while smoking. Upon arrival at the hotel, Carlson phoned Blackmore, who was at the hotel, to notify her to help Brangham. When Blackmore came out of her room, she was met by Carlson and was aggressive toward the officers and Brangham. Blackmore had been drinking that evening and was suffering from a recent death in the family. As is typical for an arrest, Carlson turned Blackmore around, pinned her against the wall, and cuffed her behind her back. Officer Carlson then placed Blackmore in handcuffs and escorted her to the police truck. Body camera video of Officer DeMille shows that DeMille had little physical interaction with Blackmore and verbally interacted with Blackmore seldom. (Exhibit A Carlson) (Exhibit B DeMille)

Blackmore was then booked into the Washington County Jail. Booking records indicate that Blackmore had no medical or mental health complaints upon entering the jail. (WACO00052-00054) The arrest probable cause statement does indicate that Blackmore smelled of alcohol from her breath and that she admitted to drinking after work. (WACO00006-00008) She was also placed on "DETOX OBSERVATION" when housed at the jail. (WACO00054)

After the booking was completed, Blackmore reports that she was strip searched by a female officer while four male officers watched. Although booking pictures seem to indicate that there was some type of change of clothing as indicated by the judge in the motion to dismiss, there is no indication that she was wearing jail issued clothing. Blackmore claimed she was dressed out in orange jail issue clothing, but no booking pictures support that claim. Marc Boyd VanDam, a sergeant at Washington County Jail, declared that no strip search was completed at any time on Blackmore. He declared that if a strip search had been completed, it would have been documented with the initials VBS for "visual body cavity search". A property, "take form" inventories clothing that Blackmore brought to the jail. VanDam reported that though these items were listed on the "take form," they were not taken from Blackmore and she was able to retain her clothing. (Document 78)

Bail was quickly set and Danyale bailed out of jail within 90 minutes. VanDam testified that he remembers a family member posting bail for Danyale and therefore would not have dressed Danyale in jail issued clothing knowing that she would be bailing out. (Document 78)

2

Blackmore reports mental trauma as a result of this arrest. In her opinion, she suffers from Post Traumatic Stress Disorder (PTSD).

On March 30, 2022, Blackmore was deposed by Frank Mylar and had not yet seen a mental health provider or physician that diagnosed her with PTSD. (Blackmore pp.198)

In April 2022, Blackmore visited Elizabeth York three times for therapy.

On April 12, 2022, Blackmore was evaluated by Elizabeth York, Counselor, LCMHC, at the Ascend Counseling and Wellness Center for Couples and Families. She self-reported loss of sleep and inability to concentrate. She reported some memory loss and feelings of being overwhelmed and stressed. Examination showed a dysmorphic mood and fair insight but was otherwise normal. York reported, "Client struggles with severe anxiety and PTSD after her arrest. She feels overwhelmed by the amount of responsibility she has running her business and dealing with the anxiety of her court case. Counseling was given for 60 minutes. (York 001-002)

On May 18, 2022, York reevaluated Blackmore. Examination showed an irritable mood and fair insight. Blackmore reported she feels overwhelmed and sometimes wants to drop the case, but she is not in a position to do that. She is debating if continuing the case is beneficial to her mental health and wellbeing. The counseling session was 60 minutes. She reported symptoms of PTSD to York and York testified that she diagnosed Blackmore with PTSD. However, in the chart note there are no specifics as to the methodology and inclusion criteria from the DSM5 supporting this diagnosis. (York 003-004)

Blackmore was reevaluated by York on May 31, 2022. Blackmore reported symptoms of PTSD, anxiety about her arrest, and difficulty sleeping. According to her, she was unlawfully arrested. When discussing her arrest, she exhibits irritability and frustration. She reported anxiety surrounding the event. The counseling session lasted 60 minutes. (York 005-006)

York testified that Blackmore was shaking, trembling, and holding herself when describing the events of having to undress in front of multiple male officers. York testified that Blackmore did not appear to be lying about the strip search by the male officers. However, York did not offer testimony that supported any facts that a strip search was completed other than statements by Blackmore. It is difficult to determine the truthfulness of a patient to any degree of medical certainty. (York Deposition Video)

Blackmore testified that no professional, medical, or mental health, has ever diagnosed her with PTSD. (Blackmore pp.208-209) She also reported receiving six ketamine injections from Scott Allen MD. Blackmore did not know when she received them or what the underlying diagnosis was for receiving them though she thought it was due to lack of sleep. After review of the Ketamine infusion records (Satori 1-7) the indication and diagnosis for the treatments was alcoholism and anxiety.

Dr. Allen testified he never diagnosed Blackmore with PTSD. PTSD is not mentioned as a diagnosis in these records. Blackmore testified that she had PTSD when she left the jail due to the arrest. She never discussed the jail arrest with Dr. Allen. Dr. Allen testified after the lawsuit was filed that the ketamine treatments were focused on treating anxiety. Dr. Allen testified that ketamine treatments in general were focused on treating depression, PTSD, anxiety, and alcohol abuse. (Allen Deposition Video) However, a review of the medical literature mentioned above reveals that ketamine treatments for PTSD are not well supported.

**Post-traumatic stress disorder**

While much of the pathophysiology of posttraumatic stress disorder (PTSD) is unclear, previous exposure to trauma appears to increase the risk of developing PTSD with subsequent traumatic events. The mechanism by which this "sensitization" occurs is unclear. A study of severely injured accident victims who were healthy before experiencing trauma found that the incidence of PTSD was low. Typical events that cause PTSD include major trauma, home invasion, combat, sexual assault, physical injury, mass conflict, and torture with cumulative exposure.

The clinical manifestations of PTSD include flashbacks, dissociative episodes, fleeing, or combative behaviors. These symptoms are more marked and lead to more psychosocial disruption than in other individuals who have experienced trauma without subsequent PTSD. Individuals with PTSD compensate for such intense arousal by attempting to avoid experiences that may elicit symptoms.

By definition, all patients with PTSD have some elements of the cardinal features, which include experience of a traumatic event, intrusion symptoms, avoidance symptoms, negative alterations in cognition or mood, and arousal or reactivity changes.

**Criterion A: Traumatic event** — The trauma experienced by those who present with PTSD is extreme. Examples include motor vehicle accidents, exposure to violence in military operations, home invasions/robberies, rape, and severe physical illness that threatens death. I reviewed the materials of the Blackmore booking and I concluded that there was no evidence of severe trauma, physical harm, or chance of death. Blackmore alleges that she was forced to disrobe in front of several male officers in a strip search type fashion. However, I have seen no evidence that a strip search was completed other than the testimony of Blackmore, who was intoxicated at the time. Multiple officers testified that a strip search was not completed, and that Blackmore was not naked in front of male staff. It would be contrary to Washington County Jail policy to conduct a strip search, as Blackmore alleges.

**Criterion B: Intrusion symptoms** — Intrusion symptoms, also known as "re-experiencing," symptoms, are the hallmark of PTSD. Unwanted intrusive memories of the traumatic event vary widely from occasional unwanted thoughts about the trauma to frequent nightmares to "flashbacks." Intrusion symptoms are typically associated with substantial psychological distress such as fear or panic. Physiological reactions such as autonomic arousal may also be present. Intrusion symptoms can occur spontaneously or be triggered by events that resemble or symbolize an aspect of the trauma. In Blackmore's case, I reviewed the medical notes from Dr. Allen and counselor York. Neither of these medical notes indicate significant intrusion symptoms. York's testimony of Blackmore's distress when recounting the episode of disrobing could be an indication of this, but there is evidence that this event never occurred. The issue of whether a strip search did occur is a question of fact for the jury to decide.

**Criterion C: Avoidance symptoms** — Avoidance of stimuli associated with the traumatic event can lead to changes in behavior that affect personal and work life. Patients may try to avoid internal thoughts or feelings related to the trauma but may also avoid activities, people, or situations that remind them of the trauma. This avoidance may lead to impairment in daily life functioning. For example, it could lead to avoidance of driving in a vehicle or being in a crowded location. Victims of trauma will often avoid specific places where the trauma occurred. I found no evidence of avoidance symptoms in York's evaluation. In fact, Blackmore is deciding to actively remember and pursue legal action, which is not typical of PTSD symptoms.

**Criterion D: Negative cognitions and mood** — Depression and negative mood alterations may be seen in the initial presentation of PTSD. Patients may have difficulty experiencing positive emotions, have decreased interest in activities such as work, leisure, or social engagements. They may describe

being unable to connect to others. Many patients experience excessive guilt about the event and blame themselves for the occurrence. This may lead to negative beliefs about themselves and may ultimately change their worldview. They may begin to see the world as a dangerous, malevolent place. Recognition of these symptoms as part of a response to a traumatic experience is essential for diagnosis of PTSD. York reports that Blackmore does have some mood irritability, but does not report guilt, blame, or lifestyle changes. Dr. Allen reported that Ketamine treatments are given for depression symptoms related to PTSD, yet Dr. Allen never diagnosed Blackmore with PTSD.

      **Criterion E: Arousal and reactivity changes** — Patients may initially present with symptoms of irritability or aggressive physical or verbal behaviors. Other symptoms may include reckless or self-destructive behaviors (e.g., substance use), feeling on edge, being easily startled, decreased concentration, and sleep disturbances. For accurate diagnosis, it is important to recognize these symptoms as having started after the traumatic event. Blackmore does report sleep changes, anxiety, and decreased concentration per York's report.

      Any type of event can cause PTSD-like symptoms, such as anxiety and depression, but this does not indicate that the patient has PTSD. Events like breakups, arrests, legal troubles, financial losses, or friendship drama can cause PTSD-like symptoms. An arrest is always a meaningful and memorable event in a person's life. Even so, PTSD-like symptoms and true PTSD are clinically distinct. PTSD is a very common claim, but is over diagnosed in many situations.

      Blackmore does not meet the criteria for PTSD. The alleged traumatic event when viewed from the camera footage of officers Carlson and DeMille does not show sustained trauma that would meet Criteria A, nor is there trauma in the jail. She also does not meet Criteria B intrusion symptoms or Criteria C avoidance behavior. It is also noteworthy that Blackmore did not seek mental health counseling until April of 2022, nearly 27 months after the initial arrest and 1 month after her deposition for this trial. Typical PTSD symptoms are manifested acutely and immediately after the event and then improve with time. There is no evidence of PTSD symptoms for the first 2 years after the event and no evidence of impairment during that 27 month period.

      PTSD is also less likely in Blackmore's case due to her alcohol use that evening. Alcohol inhibits the brain from forming solid memories and causes a distortion of memory while under the influence. Officer DeMille stated that Blackmore was emotional and "acting like a child" during the arrest and while she was in the police vehicle. (Exhibit A Carlson). This behavior is typical for a patient who is under the influence of alcohol and is unlikely to cause PTSD.

      It is very difficult to quantify PTSD in a situation where Blackmore did not seek any type of therapy for 27 months post event. Now, five years after the arrest, it would be extremely unusual for Blackmore to still be experiencing effects from an arrest and booking that was less than 90 minutes. It is not clear what effect an alleged strip search could have had on Blackmore's alleged PTSD. There is evidence that the strip search never happened. If it did happen, it is not mentioned in the counseling visits with York as playing a major role in the PTSD symptoms, and neither the arrest nor the strip search are mentioned at all in the ketamine treatment sessions with Dr. Allen.

      A licensed counselor such as York is qualified to make the diagnosis of PTSD. However, I believe that her interpretation of that diagnosis as applied to Blackmore's situation is inaccurate. York has not followed up with Blackmore since May, 2022. Blackmore has not sought any type of counseling, treatment, or medication for the diagnosis in the last 2 years. It is very unlikely that the intrusion symptoms have been sustained during sometime in the past without Blackmore seeking treatment for them.

Blackmore's arrest was clouded by intoxication. Her intoxication likely impaired her memory of the facts of the arrest and jail experience. There are tens of thousands of arrests each year, but these arrests do not often result in PTSD. Blackmore's symptoms of PTSD, if valid, are more likely related to earlier life experiences and life stress that were compounded by the arrest, rather than the arrest itself.

**Facts about PTSD**

1. It is proven that patients with PTSD who begin treatment as soon as possible after the event prevent chronicity and lead to the best outcome. Blackmore did not seek a diagnosis or treatment for her alleged PTSD until after the deposition completed by Mylar Law 2 years after the event.

2. Supportive measures for PTSD include psychoeducation and case management and are the most helpful for patients who are acutely traumatized. Neither Dr. Allen nor therapist York provided either treatment according to their documentation and testimonies.

3. According to uptodate.com, first line therapy for PTSD includes a trauma-focused therapy that includes exposure rather than medication. Dr. Allen did not attempt any type of trauma based therapy when treating Blackmore and merely administered ketamine.

4. Ketamine does not have an FDA indication for the treatment of PTSD or depression.

5. In order to treat depression effectively, ketamine should only be used when multiple treatment options have failed, such as counseling, serotonin reuptake inhibitors such as Prozac, Zoloft, or Paxil, or SNRI medications such as Effexor, Wellbutrin, or multiple other antidepressants.

6. Dr. Allen did not attempt to provide antidepressant medications, counseling, cognitive-behavioral therapy, or mental health therapy prior to or after his treatments with ketamine.

7. Anesthesiologists can open ketamine clinics and provide ketamine for patients to relax and have a mental "trip". However, anesthesiologists are not well trained in mental health therapy and depression. Ketamine therapy is unproven for PTSD and should only be tried on patients who have failed traditional therapies.

8. In multiple randomized trials, only 11% of patients showed improvement in depression by day 14 after ketamine injections.

9. In comparison to other physicians, anesthesiologists have a high rate of drug addiction. In his testimony, Dr. Allen admitted to receiving ketamine injections as well. Because of his profession and conflict of interest as an anesthesiologist, Dr. Allen should not participate in ketamine injections for himself even if administered by his staff or another provider in his clinic.

**Summary**
Blackmore's alleged PTSD related to her arrest is dubious. She showed no signs of concern prior to the filing of her lawsuit. Then once deposed and realizing that she was not diagnosed with PTSD, she sought counseling from York. The choice of York as a provider is suspicious. York's testimony and CV state that she specializes in "Personal injury PTSD services and comprehensive case analysis". This type of clinical/legal work does not allow York to have a clinical detachment from Blackmore allowing for objective understanding and providing objective clinical treatment. Since she is providing PTSD personal injury services it is likely that York diagnoses all her patients with PTSD and participates in their legal pursuits for reimbursement. Proper counseling requires clinical detachment and nothing to be gained by the clinical provider. Further, Blackmore did not follow up with York for sustained counseling for

depression and PTSD after her initial 3 visits. Rather, Blackmore simply used York as an expert witness in her case as is explained in York's CV.

I believe the diagnosis of PTSD is not consistent with Blackmore's actions and testimony. She lacks intrusion symptoms, and the causing event does not meet the clinical DSM5 criteria as a traumatic event. Blackmore may have PTSD-like symptoms but does not qualify under the DSM5 for disability or government assistance due to lack of negative symptoms.

**Conclusion**

1. Washington County Jail booking and release procedures for Blackmore are consistent with correctional standards and would not have caused PTSD to a high degree of medical certainty.

2. La-Norma Ramirez booked Blackmore into the jail consistent with the correctional standards, and this would not have caused Blackmore to have PTSD to a high degree of medical certainty.

3. Dr. Allen treated Blackmore for depression, alcohol issues, and anxiety with ketamine. It was only after the lawsuit was filed that Dr. Allen added PTSD as a justification for the treatment. It is also a conflict of interest that Dr. Allen self-treats himself with ketamine.

4. I disagree with Ms. York's diagnosis of PTSD, and Ms. York exhibits secondary gain by diagnosis and testifying for Blackmore, which is also a conflict of interest.

5. Ms. York and Dr. Allen do not give specific criteria to support the diagnosis of PTSD as required by the DSM 5.

All of my opinions expressed in this report are held to a reasonable degree of medical certainty. I reserve the right to make additional or modified opinions in the future should new information be presented.

Thank you,

Kennon Tubbs, MD NCCHC-P

Sources:

Vieweg WV, Julius DA, Fernandez A, Beatty-Brooks M, Hettema JM, Pandurangi AK. Posttraumatic stress disorder: clinical features, pathophysiology, and treatment. Am J Med. 2006 May;119(5):383-90. doi: 10.1016/j.amjmed.2005.09.027. PMID: 16651048.

Grinage BD. Diagnosis and management of post-traumatic stress disorder. Am Fam Physician. 2003 Dec 15;68(12):2401-8. PMID: 14705759.

7

Nonpharmacologic and Pharmacologic Treatments of Adults in the Acute Phase of Major Depressive Disorder: A Living Clinical Guideline From the American College of Physicians.

Qaseem A, Owens DK, Etxeandia-Ikobaltzeta I, Tufte J, Cross JT Jr, Wilt TJ, Clinical Guidelines Committee of the American College of Physicians, Crandall CJ, Balk E, Cooney TG, Fitterman N, Hicks LA, Lin JS, Maroto M, Obley AJ, Tice JA, Yost J Ann Intern Med. 2023;176(2):239. Epub 2023 Jan 24.

Appendix I—Curriculum Vitae

**Kennon C. Tubbs M.D.**
13584 S. Carolina Hills Court
Draper, Utah 84020
(801) 501-9573 Home
(801) 502-3473 Cell
jailmd@gmail.com
_____

**EDUCATION:**
    1996-1999    *Utah Family Practice Residency,* Provo, Utah
    *Board Certification in Family Medicine:* expires January 2026
    *Senior Resident Teaching Award:* 1997-98 and 1998-1999
    David Flinders Award for excellence in Behavioral Medicine: 1998-1999
    1992-1996    *Georgetown University School of Medicine*, Washington, D.C.
    *Doctor of Medicine:* May 1996
    *Health Care America with Hillary Clinton:* 1996
    *AIDS Outreach Program:* 1993
    1988-1992    *Colorado State University*, Fort Collins, Colorado
    *Bachelor of Science major Biology:* July 1992

**CLINICAL EXPERIENCE:**
2019-2023    *Tooele County Jail Medical Director,* County jail of 230 inmates
2007-Present    *Uinta County Jail Medical Director* County jail of 100 inmates
    2007-Present    *Sweetwater County Jail Medical Director* County jail of 150 inmates
    2009-Present    *Summit County Medical Director* County jail of 70 inmates
    2009-Present    *Wasatch County Medical Officer* County jail of 70 inmates
    2009-Present    *Utah County Jail Medical Director* County jail of 750 inmates
    2016-Present    *Lincoln County Jail Medical Director* County jail of 70 inmates
    2016-Present    *Juab County Jail Medical Director* County jail of 60 inmates
    2016-Present    *Teton County Jail Medical Director* County jail of 30 inmates
    2017-2024    *Granger Urgent Care* Urgent care 4 different clinics in Salt Lake
    2006-Present    *Octapharma* Plasma Donation Center back-up physician
    2002-2020    *Daggett County Jail Medical Director* County jail of 110 inmates
    2002-2020    *Duchesne County Jail Medical Director* County jail of 120 inmates
    2007-2017    *Uintah County, Utah Jail Medical Director* County jail of 90 inmates
    2015- 2016    *Stat+MD Urgent Care* Urgent care work at privately owned urgent care in Park City, Utah
    1999-2015    *Utah State Prison Physician* Attending physician duties included overseeing six physician assistants, specialty clinics in women's health, hepatitis, diabetes, trauma management, drug rehabilitation and emergency care. Inpatient rounds and primary care provider for difficult cases that were referred by physician assistants. Coordinated university hospital's care and appropriate specialty consultation.

  2002-2012  *__Holland America__* Cruise ship physician for 1500 passenger cruise line 2-week commitment per year. Have cruised to Alaska, Hawaii, Mexico, Baltic Sea, Japan, China, Norway, North Sea and Caribbean Sea.
  2008-2012  *__Mixed Martial Arts Physician__* Ultimate Combat Experience ringside physician.
  1997-2007  *__Emergency Room Physician__* Orem Community Hospital and Utah Valley Hospital. Full emergency hospital privileges. Single coverage E.R. level 3 hospital 15,000 patient visits per year.
  1996-1999  *__High School Team Physician__* Sports medicine care at football, basketball, and other athletic events for Provo High School.
  1998  *__Alaska Indian Health Service__* Metlakatla, AK. Complete health coverage for the Annette Island Indian Reservation (2-month rural rotation residency).
  1997  *__Yosemite National Park Physician__* Emergency services for rural health clinic and rural to wilderness emergency triage and transport services. Residency elective training 2 months.
  1993-1994  *__Food and Drug Administration__* Washington D.C. New Drug Approval Committee medical student internship.

**MEMBERSHIPS:**  **National Commission on Correctional Medicine member**
  **American Academy of Family Physicians Diplomat**
  **Currently Board Certified until 2026**
  **National Commission on Correctional Health Care certified Physician**

**LICENSURE:**  **Utah CS Schedule 2-5 #344132-8905 expires 01/31/2026**
  **Utah Medical Licensure 3344132-1205 expires 01/31/2026**
  **Wyoming State Licensure 7730A expires 6/30/2025**
  **DEA BT5545100 expires 11/2026**
  **BLS expires 6/25**
  **Police Officer Standards Training (POST) certified 2001-2023**

**HONORS/AWARDS**
  **National Health Service Scholarship**
  2000-2006, Scholarship for primary care service to underserved patient populations.

**David C. Flinders Award** for Excellence in Behavioral Medicine
  Utah Valley Family Practice Residency 1999

**Senior Resident Excellence in Teaching Award**
  Utah Valley Family Practice Residency 1999-1998 and 1998-1997

**Galaxo Wellcome Family Practice Resident Scholar**
  Utah Chapter 1998

10

Appendix II

February 12, 2025

Kennon C. Tubbs MD

National Commission on Correctional Health Care Certified Physician

American Academy of Family Medicine Board Certified

Deposition File:

**GREYGOR v. WEXFORD HEALTH SOURCES, INC.**

Civil Action No. 2:14-cv-1254

Deposition taken July 2016 Hired by Goodrich & Geist, P.C. Plaintiff as an expert in correctional medicine as a treating physician.

**IAN D. COFFEY v. DAVIES-DEKALB COUNTY JAIL AND ADVANCED CORRECTIONAL HEALTHCARE INC.**

Civil Action No. 15DV-CC00085

The deposition was taken May 2017 Hired by Advanced Correctional Healthcare Defendant as an expert in correctional medicine as a treating physician.

**TRUJILLO v. CITY AND COUNTY OF DENVER**

Civil Action No. 14-cv-02798-RBJ-MEH

The deposition was taken March 2017 hired by Holland & Hart LLP Plaintiff as an expert in correctional medicine as a treating physician.

**HARVEY BROADUS V. MICHAEL HERBIK, CORRECT CARE SOLUTIONS, INC. and WEXFORD HEALTH SOURCES**

Case No. 2:2016-cv-00751 Deposition taken August 1st, 2017 Hired by Meyers Evans & Associates, LLC Plaintiff as an expert in correctional medicine as a treating physician.

**Carl Hemphill v. Wexford Health Sources**

Case No. 15-CV-04968 Deposition taken December 13, 2018 by Plaintiff Andrew McClain

Hired by James Maruna Defense as an expert in correctional medicine as a treating physician.

**Pamela Barrier v. Armor Correctional Health**

Case No. 50-2012-CA022822-XXXX-MD

The deposition was taken January 7th, 2019 by Defense Jami Gursky

Deposition was taken a second time on August 27th, 2019

Hired by Howard Grossman Plaintiff as an expert in correctional medicine as a treating physician.

**Wendell Weaver v. Martija, Becerra, Pfister, Lamb, Baldwin, Obaisi**

Case No. 16-CV-09400

June 27, 2019

Deposition as expert in correctional medicine Hired by Defense Obaisi.

Hired by James Maruna Defense as an expert in correctional medicine as a treating physician.

**Ira B Harris v Gary Kempker**
Case No. 1:15-cv-00140-SNLJ
August 20, 2019
Deposition as expert in correctional medicine Hired by Defense Tad Eckenrode

**Scott Peters v. Wexford Health Sources**
Case No. 1:17-cv-04809
Deposition taken January 10th, 2020 by plaintiff Kirkland and Ellis, LLP
Deposition as expert in correctional medicine hired by James Maruna Defense

**Demario McNeil v. Saleh Obaisi**
Case No. 16-C-11256
Deposition taken January 14th, 2020 by plaintiff Demetra Christos
Deposition as expert in correctional medicine hired by James Maruna defense.

**Benjamin Ramsey v. Southwest Correctional Medical Group**
Civil Action No. 1:18-cv-01845-WJM-KLM
Deposition taken November 18th, 2020 by Defense Wheeler, Trig O'Donnell
Deposition as expert in correctional medicine hired by Cheryl Trine plaintiff.

**Spencer Martin v. Saleh Obaisi**
Case No. 17-cv-4328
Deposition taken March 10, 2021
Deposition as expert in correctional medicine hired by James Maruna defense.

**Matthew Mglej v. Gardner**
Case No. 2:13-cv-00713
Deposition taken June 30, 2021
Deposition as expert in correctional medicine hired by Frank Mylar defense.

**Ludell Wren v. Corizon LLC**
Case No. 20BU-CV03584
Deposition taken November 11, 2021
Deposition as an expert in correctional medicine hired by Tad Eckenrode defense.

**ANDREW FLOWERS JR V. WEXFORD HEALTH SOURCES**
Case No. 1:19 cv-06423
Deposition taken January 14, 2022
Deposition as an expert in correctional medicine hired by James Maruna defense

**PATRICK IVAN BROWN V. WEXFORD HEALTH SOURCES INC AND ALMA MARTIJA, MD**
Case No. 17 CV 1647
Deposition taken May 18, 2022
Deposition as an expert in correctional medicine hired by James Robinson defense

**SHERMIN MORISETTE v. WEXFORD HEALTH SOURCES, INC**

Case No. 1:19-cv-4945
Deposition taken July 8, 2022
Deposition as an expert in correctional medicine hired by James Maruna defense.

**Estate of Madison Jensen v. Jana Clyde; Logan Clark**
Case No. 2:17-cv-01030
Deposition taken December 8, 2022
Deposition as an expert in correctional medicine hired by Frank Mylar defense.

**Brandon Swallow v. Dr. William McKinney, Dr. Karen Duberstein, Corizon Health Inc.**
Case No. 4:18-cv-1045-JMB
Deposition taken February 6, 2023
Deposition as an expert in correctional medicine hired by Tad Eckenrode defense.

**Paugh v. Uintah County,**
Case No. 2:17-cv-1249
Deposition taken April 19, 2023
Deposition as an expert in correctional medicine hired by Frank Mylar defense.

**James Lee Dorsey v. Saleh Obaisi, Alma Marjita, Latanya WIliams, and Wexford Health Sources, INC.**
Case No. 16-CV-07884
Deposition taken January 18, 2024 Hired by Robert Tengesdal defense.

**Goich v. Terry Thompson and Weber County**
Case Civil No 2:18-CV-00731-JNP
Deposition taken February 21, 2024
Deposition as an expert in correctional medicine hired by Frank Mylar defense.

**Cassandra Oliver v. South Central Correctional Center; Shelia Duncan; Ashok Chada; Kerry Hartman; Marley Stephan; Rebecca Murr; Shana Hensel**
Case No. 6:21-cv-03226-MDH
Deposition taken March 7, 2024 Hired by Tad Eckenrode defense

**Thomas Freeman v. Wellpath LLC, Sun Kim, Jeniffer Griffith**
Case No. 1:22-cv-01613
Deposition taken May 30, 2024 Hired by Ron Neuroda defense.

**Gevas v. Wexford Health Sources, et al**
Case No. 16-cv-10599
Deposition taken June 5, 2024 by plaintiff Harold Hirchman
Hired by James Robinson defense


**Trial testimony**

**Stella v. Davis County**
Case No. 1:18-cv-00002-JNP-DBP
July 18, 2022

**Finlinson V. Utah County**
Case No. 2:16-cv-01009-TC
September 13, 2022

**Paugh v. Uintah County**
Case No. 2:17-cv-1429
August 15, 2023

**Gevas v. Randy Pfister and Wexford Health Sources, et al**
Case No. 16-cv-10599
July 10, 2024



Appendix III
I am being compensated at a rate of $500 per hour for time spent on my report and sitting for a deposition. I am being compensated at a rate of $4,000 per day for my time spent on providing court testimony. My compensation is not contingent upon my opinion or the outcome of this matter.