THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DANYALE BLACKMORE,<br><br>              Plaintiff,<br><br>v.<br><br>LA-NORMA RAMIREZ,<br><br>              Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF EVERETT K. NEELY**<br><br>Case No. 4:21-cv-00026-AMA-PK<br><br>District Judge Ann Marie McIff-Allen |

Defendant seeks to exclude or limit at trial the testimony of Plaintiff's expert, Everett K. Neely ("Motion").[1] Mr. Neely is the Deputy Director of Operational Services for the Orange County Corrections Department in Orlando, Florida.[2] Plaintiff designated Mr. Neely as a retained expert as follows:

> Mr. Neel[y] currently serves as Deputy Director of Operation Services, overseeing all jail operations in the Orange County Corrections Dep[]artment, Orlando, Florida. He has previously been affiliated with American Correctional Consultants, LLC[], where he led audits of jails and prison[s] for the American Correctional Association.
>
> Mr. Neely has over 30 years of correctional experience in Broward County, Florida. His areas of expertise include jail operations and management, booking (intake) procedures, development of policies and procedures, and training and supervision of correctional officers. He will testify regarding the Washington County Jail policies and practices as they relate to booking (intake) procedures, record keeping and strip searches.[3]

---

[1] Motion to Exclude or Limit the Testimony of Everett K. Neely and Memorandum in Support ("Motion"), docket no. 220, filed Mar. 28, 2025.

[2] Everet K. Neely *Curriculum Vitae* ("Neely CV"), docket no. 240-1, filed Mar. 28 2025.

[3] Plaintiffs' Rule 26 Disclosure of Expert Witnesses (Updated) at 2, docket no. 178, filed Oct. 3, 2024.

Plaintiff also designated Mr. Neely as a rebuttal expert as follows:

> Mr. Neely provided a report to Defendants dated October 22, 2024. Additionally, Defendants took Mr. Neely's deposition on December 10, 2024. Accordingly, the summary of 'facts and opinions to which the witness is expected to testify," . . . is set forth in that deposition and his report . . . . He will testify about any and all aspects of matters he addressed in his deposition and/or report. Additionally, he will rebut any testimony offered by any of Defendants' experts.[4]

Defendant challenges Mr. Neely's qualifications as an expert and the reliability of his methods and opinions.[5] Defendant also argues that Mr. Neely's anticipated testimony and opinions are irrelevant to the trial issues and improperly usurps the exclusive duty and function of the jury to assess witness credibility and to find facts.[6]

Because Mr. Neely's anticipated testimony and opinions are not relevant to the trial issues, are unnecessary and unhelpful to jury's understanding of the trial issues, and impermissibly invade the exclusive roles of the judge and jury, Defendant's Motion[7] is GRANTED.

## DISCUSSION

District courts are tasked with the responsibility of serving as the gatekeepers of expert evidence and must decide which experts may testify before the jury and the permissible scope of that testimony.[8] In making these determinations, the district court is given "broad latitude."[9] But the district court must be mindful that the Federal Rules of Evidence generally favor the admissibility of expert testimony.[10] Excluding expert testimony is the exception rather than the

---

[4] Plaintiffs' Disclosure of Expert Rebuttal Witnesses at 2-3, docket no. 203, filed Feb. 27, 2025.

[5] Motion at 2-3, 6-9.

[6] *Id.*

[7] Docket no. 220, filed Mar. 28, 2025.

[8] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[9] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[10] *Daubert*, 509 U.S. at 588.

rule.[11] "Vigorous cross-examination, the presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence."[12] "[T]he [district] court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[13]

FED. R. EVID. 702 governs the admissibility of expert testimony. The Rule requires, among other things, that "the evidence or testimony [of an expert] '[help] the trier of fact to understand the evidence or to determine a fact in issue.'"[14] "This condition goes primarily to relevance."[15] Relevant evidence has any tendency to make a fact of consequence in determining a case more or less probable than it would be without the evidence.[16] Thus, "an expert's testimony must provide insight and understanding about the facts and issues of the case."[17]

The helpfulness of testimony is not without constraint. The district court "must also consider . . . whether the expert['s opinions] encroach[] upon the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability."[18] The Tenth Circuit Court of Appeals has recognized that:

> A witness cannot be allowed to give an opinion on a question of law. . . . In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic

---

[11] FED. R. EVID. 702 Advisory Notes.

[12] *Daubert*, 509 U.S. at 596.

[13] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 596).

[14] *Daubert*, 509 U.S. at 591 (quoting FED. R. EVID. 702).

[15] *Id.*

[16] FED. R. EVID. 401.

[17] *Whatcott v. City of Provo*, No. 2:01-cv-00490-DB, 2003 WL 26101357, *2 (D. Utah June 2, 2003).

[18] *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

concept. Reducing the proposition to a more practical level, it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently.[19]

"The concern that an expert should not be allowed to instruct the jury is also emphasized in FED. R. EVID. 704, which allows witnesses to give their opinions on ultimate issues."[20] "While testimony on ultimate facts is authorized under Rule 704, . . . testimony on ultimate questions of law is not favored."[21] "The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case."[22]

"[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."[23] "[A] witness may [also] properly be called upon to aide the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."[24] Thus, "an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function."[25] But "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed."[26] "In no

---

[19] *Id.* (quoting Stoebuck, *Opinions on Ultimate Facts: Status, Trends, and a Note of Caution*, 41 Den. L. Cent. J. 226, 237 (1964)).

[20] *Id.*

[21] *Id.* at 808.

[22] *Id.*

[23] *Id.* at 809.

[24] *Id.*

[25] *Id.* at 809-810.

[26] *Id.* at 810.

instance can a witness be permitted to define the law of the case."[27] Nor may a witness be "allowed to instruct the jury on how it should decide the case."[28] "[A]n expert is not to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury."[29] Such impermissible testimony is not helpful under FED. R. EVID. 702.

Although Defendant challenges Mr. Neely's qualifications and the reliability of his methods and opinions, it is unnecessary to address these issues. This is because Mr. Neely's anticipated testimony and opinions are not relevant to the trial issues; are unnecessary and unhelpful to jury's understanding of the trial issues; and improperly invade the exclusive roles of the judge and jury.

### Mr. Neely's anticipated testimony and opinions regarding jail practices and procedures are not relevant to the trial issue

Mr. Neely's expert report indicates that he was asked by Plaintiff to testify and opine on whether "proper records management practices [were] in place at [the jail] on January 6, 2020[.]"[30] And his report includes lengthy discussion and numerous opinions regarding jail practices and procedures, including whether the staff at the Washington County Jail adhered to the jail's policies and procedures.[31] This expert testimony and opinion may have been highly relevant at some earlier point in this case. However, Plaintiff's only remaining claim is that Defendant conducted a strip search on Plaintiff in violation of Plaintiff's constitutional rights.[32]

---

[27] *Id*.

[28] *Id*. at 808.

[29] *Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-EJF, 2015 WL 4949097, *5 (D. Utah Aug. 19, 2015).

[30] Expert Report of E. Keith Neely ("Neely Report") at 10, 19, docket no. 220-1, filed Mar. 28, 2025.

[31] *Id*. at 10-20.

[32] Memorandum Decision and Order Granting in part and Denying in part Washington County Defendants' [76] Motion for Summary Judgment at 17-24, 30, docket no. 155, filed June 3, 2024.

Plaintiff's claims relating to the Washington County Jail's policies and procedures have been dismissed with prejudice.[33]

Mr. Neely's anticipated testimony and opinions regarding jail practices and procedures do not make any fact of consequence at trial more or less probable. Plaintiff offers only vague and conclusory argument regarding the relevance of these matters to the trial issues,[34] which is insufficient. Whether the Washington County Jail implements the best (or standard) practices and procedures, including the jail's use of certain forms and systems, is not at issue in the case or relevant to whether Plaintiff was unconstitutionally strip searched by Defendant. And whether the staff at the Washington County Jail followed the jail's own policies and procedures is not at issue in the case or relevant to whether Plaintiff was unconstitutionally strip searched by Defendant. Mr. Neely's anticipated testimony and opinions on these matters have no probative value to the trial issues. Indeed, as will be discussed,[35] it appears that Mr. Neely's discussion of these matters is used solely as a vehicle for his attempts to inappropriately instruct the jury on the law relating to strip searches, and to improperly sift through the evidence and make credibility determinations.

Because Mr. Neely's anticipated testimony and opinions regarding the jail practices and procedures, including whether the staff at the Washington County Jail adhered to the jail's policies and procedures, are not relevant to any trial issue, Mr. Neely is precluded from offering such testimony and opinions at trial. And even if this anticipated testimony and opinions had

---

[33] *Id*. at 24-30.

[34] Plaintiffs' Opposition to Defendants' Motion to Exclude or Limit Testimony of Everett K. Neely ("Response") at 4-7, 10, docket no. 240, filed Apr. 11, 2025.

[35] *Infra* Discussion at 8.

some relevance to the trial issues, its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.[36]

### Mr. Neely's anticipated testimony and opinions interpreting the jail's policies and forms are unnecessary and unhelpful

Mr. Neely's expert report includes lengthy discussion and numerous opinions interpreting the language of the Washington County Jail's policies and forms.[37] Plaintiff argues that this anticipated testimony and opinions "will help the jury understand the jail's booking procedures, record keeping practices, and use of JMS software."[38] But Plaintiff's argument is conclusory and fails to explain why expert testimony is needed to help the jury's understanding of these matters.

Plaintiff identifies no specific policy or practice, or language within the jail's policies and forms, that would require the specialized knowledge and skill of an expert for the jury to understand the policy, practice, or form. Plaintiff identifies terms such as "take," "store," and "return" in relation to the jail's forms regarding an arrestee's property.[39] But these are not terms that a lay juror would be unfamiliar with or not understand. Indeed, Mr. Neely's report demonstrates that his anticipated testimony and opinions apply common definitions to the plain language of the jail's policies and forms.[40]

Mr. Neely may have a wealth of specialized experience and knowledge regarding jail policies and procedures, but such experience and knowledge is unnecessary to understand the purpose and meaning of the plain language of the jail's policies and forms. A lay juror may have no experience with jail policies and procedures, or being booked into jail and strip searched. But

---

[36] FED. R. EVID. 403.

[37] Neely Report at 10-20.

[38] Response at 5.

[39] *Id*. at 5-7, 9-10.

[40] Neely Report at 10-20.

this does not mean that understanding the purpose, common meaning, and plain language of the jail's policies and forms are outside the ken of common experience. And Plaintiff fails to demonstrate that such understanding is outside the ken of common experience.

On this record, expert testimony and opinions are unnecessary to the jury's understanding of the purpose and meaning of the Washington County Jail's policies and forms. Mr. Neely's anticipated testimony and opinions on these matters is not helpful to the jury for purposes of admissibility under of FED. R. EVID. 702. And any probative value that Mr. Neely's anticipated testimony and opinions on these matter may have is substantially outweighed by the danger of unfair prejudice resulting from the jury placing greater emphasis and credibility to the testimony and opinions of an expert, undue delay, and wasting time.[41]

### Mr. Neely's anticipated testimony and opinions impermissibly invade the exclusive roles of the judge and jury

Mr. Neely's expert report indicates that he was asked by Plaintiff to testify and opine on whether "[Defendant] perform[ed] a 'strip search' [on Plaintiff]" and whether "it [was] appropriate for three male deputies to watch [Plaintiff] undress and change into jail clothes[.]"[42] And his report includes lengthy discussion and numerous opinions regarding the facts, including disputed facts and the anticipated testimony of witnesses, and the law relating to strip searches.[43] Mr. Neely's anticipated testimony and opinions on these issues is improper and invades the exclusive roles of the judge and jury.

Mr. Neely states that "[i]f facts or evidence directly contradict statements offered as evidence, I attempt to point out contradictions and provide them context."[44] In his discussion of

---

[41] FED. R. EVID. 403.

[42] Expert Report of E. Keith Neely ("Neely Report") at 10, 19, docket no. 220-1, filed Mar. 28, 2025.

[43] *Id*. at 10-20.

[44] *Id*. at 4.

the facts Mr. Neely opines that "[t]he details of the events leading to [Plaintiff's] arrest have no bearing on the questions involving [Defendant]."[45] This opinion directly contradicts multiple orders issued in this case regarding the relevance of Plaintiff's arrest and transport to the jail to Plaintiff's claim.[46]

Mr. Neely goes on to offer an opinion on the ultimate issues in the case: "In my opinion, based on (1) [the jail's] definition of 'strip search'; (2) [Plaintiff's] allegations; and (3) [Defendant's] admissions, [Defendant] conducted a strip search of [Plaintiff] on January 6, 2020 that was contrary to [the jail's] policy and the law."[47] In doing so, Mr. Neely again directly contradicts orders issued in this case—this time, regarding Defendant's admissions and denials.[48] Mr. Neely also improperly resolves disputed facts, and he inappropriately sifts through the facts (as he finds them) and the evidence to identify what he believes is important and credible.[49] He then improperly opines the law and how the facts he identifies apply to the law.[50] For example, Mr. Neely's report states:

- Based on the record, both [Officer] Carlson and [Defendant] stated that [Plaintiff] did not have contraband. Further, [Plaintiff's] appearance and demeanor would have given a clear indication to the jail officials that she would likely be bailed out of jail within a reasonable time. Given this evidence in the record, I do not believe that [Defendant] had the reasonable

---

[45] *Id.* at 5.

[46] Memorandum Decision and Order Granting Motion to Permit Remote Testimony and Denying Motion to Exclude at 5-6, docket no. 265, filed May 6, 2025; Docket Text Order Denying [295] Motion in Limine, docket no. 350, filed May 22, 2025; Docket Text Order Granting in part and Denying in part [296] Motion in Limine, docket no. 353, filed May 22, 2025; Docket Text Order Denying [297] Motion in Limine, docket no. 355, filed May 22, 2025.

[47] Neely Report at 12.

[48] Order Denying Motion to Strike Answer to Amended Complaint, docket no. 153, filed June 3, 2024; Docket Text Order Denying [278] Motion in Limine, docket no. 346, filed May 22, 2025; Docket Text Order Denying [279] Motion in Limine, docket no. 347, filed May 22, 2025; Docket Text Order Denying [302] Motion in Limine, docket no. 364, filed May 22, 2025.

[49] Neely Report at 12-20.

[50] *Id.*

- suspicion necessary to justify [Plaintiff]'s strip search under the [jail's] policy.[51]

- Based on her medical intake interview with [Plaintiff], Nurse Jardine believed [Plaintiff] was intoxicated. Jardine recommended that [Plaintiff] be placed in Detox Observation. According to Jardine, arrestees placed in detox Observation were often required to change into jail clothes. Such might have proved justification for changing [Plaintiff] into jail clothes. However, [Defendant] den[ies] that [Plaintiff] was ever required to change into jail clothes. As such, this does not support [Plaintiff]'s strip search.[52]

- In my opinion, the circumstance surrounding [Plaintiff's] booking were not 'exigent' and did not justify an exception to the [jail's] search policy.[53]

- In my opinion, the lack of a 'record' does not mean that a strip search, as defined by [the jail's policy], did not occur.[54]

- As I've indicated, [Plaintiff] was required to disrobe which, under the [jail's] policy, constitutes a 'strip search.' She was not subjected to a VBC search as defined by [the jail's policy].

- As a professional in the corrections field, [the jail's] practice of applying some, but not all of the [jail's] policy, is dangerous and places in doubt the explanation given by [Defendant] and other Jail personnel that [Plaintiff]'s strip search could not have occurred because it was not recorded in the Jail's RMS.[55]

- In my opinion, based on Blackmore's allegations, [Defendant's] equivocal answer, and the [jail's] policy, the male officers were acting inappropriately and should not have been present while [Plaintiff] undressed.[56]

- In my opinion, based on [the jail's] policy and the availability of multiple female officers/personnel, there was no justification for any male officer to observe [Plaintiff] undress.[57]

- In my opinion, the [jail's] Take form is consistent with [the jail's] policy. The handwritten form was signed and dated by [Defendant]. It was not signed by

---

[51] *Id*. at 12.

[52] *Id*.

[53] *Id*.

[54] *Id*. (emphasis omitted).

[55] *Id*. at 13.

[56] *Id*. at 14.

[57] *Id*. at 15.

- [Plaintiff] or by a second officer. Again, this suggests that if [Plaintiff]'s clothing was taken, she would have disrobed. That would, in fact, constitute a strip search contrary to both [the jail's] policy and the law known to and accepted by jail professionals.[58]

- In my opinion, based on [Plaintiff's] allegations, the verbiage on the Take form, and the verbiage and deputy's signature on the Store form itself, the Store form suggests that Blackmore disrobed and her clothing was taken and stored in Locker 168. This would constitute a strip search that is contrary to [the jail's] policy and the law as it is known and accepted by jail professionals.[59]

- Daughton's testimony and the Return form demonstrate that [Plaintiff] disrobed and her clothing was taken from her. This constitutes a strop search that was contrary to [the jail's] policy and the law known to and accepted by jail professionals.[60]

- In my opinion, the JMS official record reflects the removal of items (clothing, bra, underwear) that, when coupled with the testimony of [Defendant], indicates that [Plaintiff] was strip search against [the jail's] policy and the law.[61]

Mr. Neely's report is rife with numerous other examples of improper and inappropriate resolution of disputed factual issues; weighing of the evidence and the credibility of witnesses; and instruction on the law and how the facts apply to the law.[62]

"[T]he judge is the sole arbiter of the law and its applicability."[63] "Only evidence can establish proof, only the jury can find facts and decide issues . . . and only the attorneys in the case can argue about the meaning of the evidence."[64] Mr. Neely's anticipated testimony and opinions impermissibly invade these fundamental roles, and are not helpful under FED. R.

---

[58] *Id*. at 16.

[59] *Id*. at 16-17.

[60] *Id*. at 17.

[61] *Id*. at 18 (emphasis omitted).

[62] *Id*. 10-20.

[63] *Specht*, 853 F.2d at 807.

[64] *Rowe*, 2015 WL 4949097, *5.

EVID. 702. And any probative value the Mr. Neely's testimony and opinions may have is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.[65] Therefore, Mr. Neely must be excluded from testifying in this case.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion[66] is GRANTED. Mr. Neely is excluded from testifying at trial.

Signed May 23, 2025.

BY THE COURT

Ann Marie McIff-Allen
United States District Judge

---

[65] FED. R. EVID. 403.

[66] Docket no. 220, filed Mar. 28, 2025.